## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. WEATHERLY.   (No. 3472.)

Court of Civil Appeals of Texas.   Texarkana.
Feb. 9, 1928.

Rehearing Denied Feb. 16, 1928.

1. **Master and servant** ⟾104—Master's duty to furnish suitable tools includes obligation to make them accessible to employees.

Master's duty to provide suitable tools and appliances carries with it the obligation to have those articles furnished reasonably accessible to the employees who are to use them.

2. **Master and servant** ⟾104—Railroad fulfilled duty to furnish machinist goggles by keeping them at place where such articles were usually kept for employees' use.

If railroad had goggles on hand in machine shop at place where such articles were usually kept for use of its employees, railroad did all the law required in furnishing goggles for use of machinist tightening nut with hammer and chisel.

3. **Master and servant** ⟾104—Master may require that part of servant's time be consumed in procuring tools and appliances from established storage places.

Master has right, if he sees proper in arranging the conduct of his business, to require that the servant devote part of his time and labor in procuring tools and appliances from established storage places, and servant cannot complain of mere inconvenience in procuring them, since his time and labor belong to the master.

4. **Appeal and error** ⟾1066—Instruction that railroad was under duty to have tools and appliances reasonably accessible to employee held to involve prejudicial error, where issue of availability of tools was not raised.

In action by machinist against railroad for damages for loss of eye while tightening nut with hammer and chisel, instruction that "it was the duty of the defendant company to exercise ordinary care to furnish and have reasonably accessible tools and appliances reason-

ably safe and suitable," *held* prejudicial error under evidence, where issue of availability of tools was not raised, since instruction would tend to convince jury that mere ease and convenience of employee should be consulted.

**5. Master and seryant** ⟐⟐129(1)—**Where servant's use of proper tools would not involve danger, master's failure to furnish safety appliance is not proximate cause of injury.**

Master's failure to furnish safety appliance cannot be regarded as proximate cause of an injury, when, by the use of proper tools and the adoption of proper method by the servant, the service could have been performed without exposure to danger.

**6. Master and servant** ⟐⟐104—**Master is under no duty to furnish safety appliances, where particular service may be performed without danger.**

Where a particular service on the part of servant may be performed in the usual and proper way, without the use of any protective appliance, master is under no obligation to furnish such an appliance, since he is not required to provide protection against danger which he should not anticipate.

**7. Master and servant** ⟐⟐104—**Railroad was under duty to furnish shop machinist with goggles, if foreman's instructions or railroad's rules required use of hammer and chisel in tightening nut.**

Duty to furnish goggles to machinist in railroad shops in tightening nut arose if railroad, by specific instructions from its foreman, or by adoption of rule or system of work among employees, required machinist to use hammer and chisel at time he was injured.

**8. Appeal and error** ⟐⟐930(1)—**Conflicting evidence must be resolved in favor of prevailing party on appeal.**

On appeal, court must resolve conflicting evidence in favor of party recovering verdict and judgment in trial court.

**9. Master and servant** ⟐⟐233(4)—**Negligence of machinist, if any, in railroad shop in selecting hammer and chisel to tighten nut on locomotive, would prevent recovery for injury from flying particle of metal proximately caused thereby.**

If machinist in railroad shops negligently selected hammer and chisel to tighten nut on locomotive, selection of tool was voluntary, and no liability could arise on part of railroad for proximately resulting injury to eye from flying particle of metal, though it was claimed railroad failed to furnish goggles.

**10. Master and servant** ⟐⟐297(2)—**Jury's finding of railroad's negligence in failing to furnish goggles to machinist tightening nut on locomotive held not sustained, in view of evidence and finding of contributory negligence.**

In action by machinist against railroad for loss of eye from flying particle of metal while machinist was engaged in tightening nut on locomotive without goggles by use of hammer and chisel, jury's finding that defendant failed to furnish goggles, and that such failure was negligence, proximately causing injury, *held* not

sustained, in view of evidence and finding of plaintiff's contributory negligence.

**11. Master and seryant** ⟐⟐278(17)—**Evidence held insufficient to support jury's findings that railroad was negligent in requiring machinist to tighten nut on locomotive and in failing to remove pipe which obstructed use of wrench.**

In action by railroad machinist against railroad for injuries to eye caused by flying particle of metal which became dislodged when machinist tightened nut on locomotive with hammer and chisel, jury's finding on special issues that defendant was negligent in requiring plaintiff to tighten nut without removing pipe which obstructed use of wrench, and in failing to have pipe removed before directing him to do the work, *held* not sustained by evidence.

**12. Trial** ⟐⟐352(5)—**Special issue as to whether railroad required machinist to tighten nut without taking down pipe which prevented use of wrench held improper as submitting two controverted issues.**

Special issue submitted to jury in machinist's action against railroad for loss of eye while tightening nut with hammer and chisel as to whether defendant required plaintiff to do the work without "taking down the pipe, if any, around and adjacent to the packing nut, and preventing (if they did) the use of a Stillson wrench in doing that work," *held* improper as submitting two controverted issues of fact, one as to whether foreman required doing of work, and the other as to whether pipe prevented use of wrench.

**13. Trial** ⟐⟐352(5)—**Interrogatory must not submit more than one controverted issue.**

It is error to submit more than one controverted issue of fact in a single interrogatory.

Willson, C. J., dissenting.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by S. J. Weatherly against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

See, also, 288 S. W. 524.

Marsh & McIlwaine and Bryan Marsh, all of Tyler, for appellant.

Edwards & Hughes, of Tyler, for appellee.

HODGES, J. In March, 1925, the appellee was employed as a machinist in the shops of the appellant at Tyler. On the morning of the 31st of that month one of his eyes was injured while he was engaged in tightening a nut on a superheater pipe attached to one of the appellant's locomotive engines. He was using a hammer and chisel. A particle of the metal broke off and lodged in one of his eyes. The injury was such as ultimately resulted in the loss of the eye. This suit was filed to recover damages for that injury.

It is alleged that the railway company was guilty of negligence, first, in failing to furnish appellee with goggles for the protection of

---

his eyes while doing that character of work; second, in furnishing him a defective chisel; third, in requiring him to tighten the nut with a hammer and chisel; fourth, in failing to have removed some pipes adjacent to the nut which interfered with the use of a wrench.

Appellant answered by general and special exceptions, a general denial, and a plea of contributory negligence. In this last-named plea it was alleged that the proper method of tightening the nut was by the use of a wrench, a method unattended by any danger; that the defendant was an experienced workman, knew the dangers of using a hammer and chisel under the circumstances, and was guilty of negligence in selecting and using such tools.

The material facts which are not disputed are substantially as follows:

During the year 1925, and prior thereto, the appellant maintained rather extensive shops at Tyler, where a number of mechanics, belonging to different crafts, were employed to make needed repairs on its cars and locomotives. When locomotives were brought in from service on the road, they were placed in the roundhouse for inspection. If, upon examination, the inspector found any defects, these were noted by him on a card, and the card delivered to the foreman of the proper department, whose duty it was to have the repairs called for made by subordinate mechanics. Usually the different mechanics engaged in repair work would call at the foreman's desk and get the cards which had been prepared by the inspector. If only light repairs were called for, such as might be made in a short time, the work was done in the roundhouse. When heavy repairs, those requiring more time, were called for, the locomotive was sent elsewhere. When light repairs were to be made on an engine registered for service, and subject to be called out at any time, the work was called a "hot shot job."

The appellee had been in the service of the appellant as a machinist more than a year prior to his injury. Before entering the service of the appellant, he had worked elsewhere and may be classed as an experienced machinist. It is not claimed in this appeal that he was inexperienced or did not understand the character of work assigned him, or did not know the proper tools that should be used in doing that work. Early on the morning of the day he was injured, or some time during the night before, engine No. 570 was brought in from the road and placed in the roundhouse for inspection. The notations made by the inspector who examined the engine called for several minor repairs, among them tightening a loose packing nut on the superheated pipe. The duty of making those repairs was assigned to the appellee, and he began work about 7 o'clock in the morning. The record indicates that, when he began work that morning, he called at the desk of the foreman, and was given the card prepared by the inspector, and that no other instructions were then given him as to how the repairs should be made, or what tools should be used by him in doing the work. The evidence shows that each machinist usually carried with him a kit of tools, such as he expected to use in doing the work to which he had been assigned. When other tools were needed at any stage of the work, the machinists were allowed time in which to procure them. Each machinist was furnished with a helper, or subordinate, who might be sent for other tools needed during the progress of the work. Appellee's helper was a colored man named Morris, who was present at the time the injury occurred.

Engine No. 570 was an oil burner, and was registered for road service at any time after the repairs were made. The character of the repairs called for by the inspector's card was what was called a "hot shot job," and it was expected that they should be completed as early as practicable. Appellee testified that, after completing some other repairs on the engine, he undertook to tighten the packing nut with a wrench secured from another employee in the roundhouse. The wrench proved unsatisfactory because of the close proximity of some adjacent pipes which interfered with the use of the wrench. About that time his foreman, Motherwell, appeared, saw the situation, and directed the appellee to use his hammer and chisel in turning the nut. In obedience to that order, and because he could not use the wrench without first removing the adjacent pipe, appellee began using the hammer and chisel. While striking the chisel with the hammer, a particle of the metal flew off, and caused the injury for which he now sues. In this appeal it is not contended that the injury did not occur at that time and in the manner stated above. The foreman, however, denied that he gave the directions to use the hammer and chisel instead of the wrench. He testified that he was not present at any time while appellee was working on the engine, and did not know what tools he was using, or how he was doing the work.

The following special issues were submitted to a jury:

"(1) Did the defendant company fail to furnish and have reasonably accessible to Weatherly goggles for his use in the work in which he was engaged when injured? Answer: Yes."

In answer to questions 2 and 3 the jury found that such failure was negligence, and a proximate cause of the injury.

"(4) Did the foreman of the defendant company, upon the occasion and at the time in question, require plaintiff Weatherly to do with a hammer and chisel the work in which he was engaged when injured? Answer: No."

On account of the negative answer to question 4, questions 5, 6, and 7 were not answered.

"(8) Did the defendant company, or its foreman under whom Weatherly worked, require him to do the work in which he was engaged when injured without taking down the pipe, if any, around or adjacent to the packing nut, and preventing (if they did) the use of a Stillson wrench in doing that work? Answer: Yes.

"(9) Did the defendant's failure to have the pipes adjacent to the packing nut, and preventing (if they did) the use of a Stillson wrench in Weatherly's work, removed before requiring him to work on said nut, if you find it did so require, render such work extrahazardous, and not reasonably safe for him while engaged therein? Answer: Yes.

"(10) Was the failure to have such pipe, if any, removed before directing plaintiff to do the work at which he was engaged, if he was so directed when injured, negligence upon the part of the defendant company or its agents under whom Weatherly worked? Answer: Yes."

In answer to question 11, the jury found that the failure to have the pipe removed was a proximate cause of the injury. The jury also found that appellee had sustained damages in the sum of $15,000, but that he had been guilty of contributory negligence, for which a deduction of $6,250 should be made. His net damages were assessed at $8,750.

[1-4] As explanatory of the issues submitted, the court instructed the jury as follows:

"It was the duty of the defendant company to exercise ordinary care to furnish, and have reasonably accessible, tools and appliances reasonably safe and suitable for use by S. J. Weatherly in the work he was engaged in on the occasion in question, and failure to use such care would be negligence."

The words, "and have reasonably accessible," following the word "furnish," are objected to as misleading when applied to the particular facts of this case. The duty to provide suitable tools and appliances carries with it the obligation to have those articles furnished reasonably accessible to the employees who are to use them. If such articles are not accessible, they are not available for use when needed, and are not furnished, in a legal sense. The words "furnish" or "provide" would seem, ordinarily, to express all the master was required to do in that respect. When the facts are such as to raise the issue of availability of the tools and appliances which the master had on hand, a charge such as that given by the court in this instance would be proper. But, when the facts do not present that issue, the language complained of would tend to impress the jury with the belief that the mere ease and convenience of the employee should be consulted. The question in this case is, Did the appellant have goggles on hand at the places where such articles were usually kept for the use of its employees? If it did have them at those places, appellant had done all the law required it to do in furnishing the goggles for the use of the appellee on that occasion. Not only was appellee allowed time to go to those places for tools or goggles when he needed them, but was furnished a helper who might be sent to any part of the premises for appropriate tools and appliances. If the master places tools and appliances likely to be needed where they are available to the employee, the latter cannot complain at a mere inconvenience to which he must submit in procuring them. The time and labor of the servant belong to the master, and the master has the right, if he sees proper, in arranging the conduct of his business, to require a part of that time and labor to be consumed in procuring from established storage places the tools and appliances which the servant is to use. Dube v. City, 83 Me. 211, 22 A. 112; Laporte v. Cook, 22 R. I. 554, 48 A. 798; M., K. & T. Ry. Co. v. Graham (Tex. Com. App.) 209 S. W. 399; Dawson v. King (Tex. Com. App.) 222 S. W. 164. Under the facts of this case, we think the language objected to should not have been included in the charge given. In view of the evidence relating to the issues to which that charge was intended to apply, we cannot say that it was harmless. In testifying, appellee not only claimed that he had not been furnished with goggles, but that he had not been furnished with a large wrench suitable for turning a nut of that size. The proof shows that the wrench which he did attempt to use was a defective one, much worn from long use. The undisputed testimony was that appellant had on hand other wrenches of the same make and size at the usual places where such implements were kept, and that they were available for use when needed.

[5, 6] Appellant contends that the evidence was not sufficient to support any of the findings of the jury upon the principal issues of fact. The first ground of liability alleged is the failure to furnish goggles for the use of the appellee in doing the work in which he was engaged when injured. For the sake of argument in discussing other issues of fact, we shall assume that the jury was warranted in finding that appellant had failed to furnish goggles. But we are not prepared to say that the evidence warranted the further finding that such failure was the proximate cause of the injury. When the servant is assigned to the performance of a particular service, it is the duty of the master to furnish appropriate tools. If the service involves an exposure to danger which may be guarded against by the use of a safety appliance, then it is the duty of the master to furnish an appropriate safety appliance, if that can be done by the exercise of ordinary care. But, when the servant is assigned to the performance of a duty which does not involve exposure to danger, when the particular service may be performed in the usual and proper way in safety without

the use of any protective appliance, then the master is under no obligation to furnish such an appliance. The failure to furnish a safety appliance can not be regarded as the proximate cause of an injury when, by the use of proper tools and the adoption of a proper method, the service could have been performed without exposure to danger. The master is not required to do an unnecessary thing, or to furnish something which the servant does not need to enable him to discharge in safety his duty to the master. Clearly the master is not required to provide protection against a danger which he should not anticipate might arise. T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162.

[7-10] In applying those principles to this case, it must be admitted that turning, or tightening, the packing nut with a hammer and chisel did expose the appellee to the very danger against which goggles were designed for protection. It must also be admitted that, if the appellant, by specific instructions from its foreman, or by the adoption of a rule or system of work among its employees, required the appellee to use a hammer and chisel at the time he was injured, then the duty to furnish goggles arose. The evidence shows that there were two ways, or methods, of tightening the packing nut: One by the use of a hammer and chisel, and the other by the use of a Stillson, or pipe, wrench. The nut was round, and about four inches in diameter. It must be conceded that, if it were practicable, under the circumstances, to use a wrench, that was the proper tool, and, if it had been used, no goggles were needed. According to the testimony of the appellee and his witnesses, a wrench could not be used without first removing an adjacent pipe which was too close to the nut for the manipulation of a suitable wrench. There was other testimony that a wrench could be used without the removal of the pipe. But, in deference to the verdict and judgment rendered, we must assume that a wrench could not be used without first removing the pipe.

Appellee testified that the foreman, Motherwell, came to where he was at work, and, after being informed of the situation, directed appellee to use the hammer and chisel. That was denied by the foreman, who stated that he did not on that occasion go where appellee was at work, did not know how he was doing the work, and gave no directions as to how it should be done. In answer to question 4, the jury found that the foreman did not on that occasion require the appellee to use a hammer and chisel. They also found that the appellee was guilty of contributory negligence. In view of the pleadings of the appellant, that finding must be interpreted as saying that appellee was negligent in selecting a hammer and chisel instead of a wrench, or that he was negligent in using the hammer

and chisel without protecting his eyes with goggles. If he was negligent in selecting the wrong tool, it was because the selection was voluntary, and hence no liability can arise for a resulting injury due entirely to his own error. It is difficult to reconcile a finding that he was guilty of negligence in failing to use goggles with the other finding that no goggles had been furnished by his employer. It is not likely that the jury would convict him of contributory negligence in failing to wear goggles when he was required to do work without goggles. That conclusion is not in harmony with the liberality shown by the jury in determining other controverted issues of fact in appellee's favor.

[11] In answer to other questions, the jury found that appellant was guilty of negligence in requiring him to do that work without removing the obstructive pipe, and in failing to have the pipe removed before directing him to do the work. After eliminating the testimony of the appellee as to the personal directions given him by the foreman, the only evidence remaining to sustain the above findings is found in the testimony regarding a system or custom of not allowing time for the removal of such pipe when making light repairs classed as "hot shot" jobs. The custom relied on is thus described by appellee's witness Moore:

"The system under which we worked there would hardly permit the pipes to be taken down on the kind of job Weatherly was doing at the time. It takes too long. I don't know just how long that system had been in vogue there, but as long as I had been there. It is owing to how soon the engine is ordered as to what objection the foreman would have to taking down those pipes. If the engine is ordered out right away, of course, he would not permit the pipes to be taken down. That was under the direction of the house foreman. You would use a hammer and chisel to do this work."

The same witness, on cross-examination, testified:

"If I am doing a job where it becomes necessary to have the pipes loosened I go to the foreman with it. The foreman will ordinarily take it down if we have time. * * * If the foreman tells me I haven't the time, I go on and do it the best way I can. Work you don't think you can get out is one thing you report to the foreman. * * * If you don't think you can do the work in time, you go and tell the foreman about it. That was the custom that prevailed at that time."

Trevathan, the inspector, who made the notations on the card under which appellee was working when injured, and a witness for the appellee, testified:

"If it becomes necessary that a pipe be taken down, the machinist who is assigned to the job takes it up with the foreman, and the foreman will then give the order for it to be removed. The customary way of tightening those nuts of

the sort we had there was with a Stillson wrench. That is the way I would have tightened it. * * * I stated that I saw where some man had used a hammer and chisel. That is how it looked to me—the indents.' That was an improper way of tightening the nut. * * * He could not have used a Stillson wrench without taking the pipes down. * * * In doing this 'hot shot' work the men should do it in the right way. If it takes longer, why, they take it, and, if it doesn't take long, they get through with it quicker. When the engine has been called, the men get the job done as quickly as possible. So far as I know, that has been customary ever since I have been there. *· * * When an engine comes in for running repairs, they do it the safest way and the quickest way. * * * It doesn't matter whether it is hot shot or heavy repair job, the rule down there is that the men should do it in the quickest, best, and safest way possible. That is what I have been trying to tell."

The foregoing is as strong as any testimony offered to show the existence of a custom which did not allow time for the removal of pipe which interfered with the use of a wrench. What effect that custom had on the appellee on that occasion is largely a matter of speculation. He did not in his testimony attribute the failure to remove the pipe to any general custom, such as that described above, but to a personal direction of the foreman, which the jury found had not been given. Nor do we think there is sufficient evidence to support a finding that time was not allowed for appellee to remove the pipe on that occasion, or that there was such haste in completing those repairs on engine No. 570 that others would not have been permitted to remove the pipe, if necessary, to do the work in a safe manner. Appellee testified that he went to work at 7 o'clock that morning, and was injured at about 8:30 o'clock, an hour and a half later. Other testimony not disputed shows that engine No. 570 was not called out for service till 9 o'clock that night. According to appellee and his witnesses, the pipe could have been taken down in a little more than an hour.

The testimony tends strongly to show that, if goggles had been available to the appellee on that occasion, he would not have used them. He made no effort, before or after beginning the work, to secure goggles from the foreman or elsewhere. As an experienced machinist, he must have known from an inspection of his card what tools and appliances he would likely need. He had at his command a helper who might be sent for goggles. A fellow workman named Moore, who had goggles in his possession at the time, and from whom appellee had borrowed goggles on former occasions, was working on an engine within a few feet of where appellee was at work when injured. Yet he made no effort to secure goggles from Moore. Among other things, appellee testified as follows:

"I didn't know that by chipping that nut as I did with the chisel that slivers were liable to fly from the nut or from the chisel into my eye. I really didn't know of it. Goggles were made to protect the men in doing certain sorts of work. * * * I didn't know it was so dangerous to babbitt, chip, grind, or do other work which causes metal to fly, without protecting my eyes with standard goggles, for I never saw any safety rules to that effect."

[12, 13] It is also contended by appellant that questions 8 and 9 are multifarious, and we think the objection is well taken. In order for the jury to give an affirmative answer, as they did, to question 8, two issues of fact had to be determined. One was that the foreman required the appellee to do the work without taking down the pipe; the other, that such pipe prevented the use of a Stillson wrench. Both of these were disputed issues. Neither had been previously submitted, unless embraced in question 4, the answer to which would be in conflict with the affirmative answer given to question 8. It is error to submit more than one controverted issue of fact in a single interrogatory. Fox v. Dallas Hotel, 111 Tex. 461, 240 S. W. 517; Southwestern Tel. & Tel. Co. v. Andrews (Tex. Civ. App.) 169 S. W. 218; T. & N. O. Ry. Co. v. Turner (Tex. Civ. App.) 199 S. W. 868.

The judgment will be reversed, and the cause remanded for a new trial.

WILLSON, C. J. (dissenting). The writer does not agree that it was error on the facts of the case to instruct the jury it was appellant's duty "to exercise ordinary care to furnish, and have reasonably accessible, tools and appliances reasonably safe and suitable for use" in the work appellee was engaged in on the occasion of the accident, and that "failure to use such care would be negligence." The evidence was that, if appellant had goggles appellee could have obtained and used on that occasion, they were in a toolhouse nearly a quarter of a mile from the building in which he was at work. 3 Labatt's Master and Servant, § 916, p. 2435. Nor does the writer agree that the evidence did not warrant the finding that appellant failed to "furnish" appellee goggles, and the findings that such failure was negligence and that such negligence was a proximate cause of the injury to appellee. He does not think the testimony of appellee that he did not know or think about the danger he incurred in doing the work as he did necessarily meant he would not have used goggles in doing it had they been furnished him. 39 C. J. 326. The writer thinks the answer of the jury to issue 4, that appellant's foreman did not require appellee to use a hammer and chisel in tightening the nut, was not inconsistent with their answer to issue 8; that said foreman did require appellee to do the work without taking down the pipe preventing the use of a Stillson

wrench; and is inclined to think the answers of the jury to issues 9, 10, and 11 were not without evidence to support them. And he thinks that, while issue 8 may have been subject to the objection that it was on the weight of the evidence, in that it assumed that the pipe prevented the use of a Stillson wrench, it was not subject to the objection that it was multifarious. It seems to him a sufficient reason for reversing the judgment has not been shown, and that it should be affirmed.