JOSEPH SCHAUM v. SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, Appellant, and KANSAS CITY TELEPHONE COMPANY, a Corporation.—78 S. W. (2d) 439.

Division One, December 21, 1934.

*Battle McCardle, S. L. Harris* and *John Mohler* for appellant; *Earl H. Painter* of counsel.

230

*Pross T. Cross* and *Gerald Cross* for respondent; *R. H. Musser* and *Louis N. Wolf* of counsel.

HYDE, C.—This case, coming recently to the writer, is an action for damages for an injury to plaintiff's right eye alleged to have been sustained while working in a manhole. Plaintiff was employed by the Kansas City Telephone Company to do underground work, that is, work in connection with laying and replacing underground cables. Before he brought suit, the property and business of the Kansas City Telephone Company was taken over by the Southwestern Bell Telephone Company. At the trial plaintiff (respondent) dismissed as to the Kansas City Telephone Company (hereinafter referred to as the telephone company) and recovered a verdict against the Southwestern Bell Telephone Company for $20,000. From the judgment entered thereon, defendant Southwestern Bell Telephone Company has appealed. It will be referred to as the appellant.

The charges of negligence in respondent's petition were as follows:

"He was negligently ordered, directed and required, by said fore-

man of said defendant Kansas City Telephone Company, to enter said manhole and to chip away the sides of same by using a hammer and chisel without providing him with goggles to wear while so doing. . . . That it was not reasonably safe for plaintiff to be so engaged in the work of so chipping away the sides of said manhole without wearing goggles. . . . Plaintiff being inexperienced in the doing of said work, and being in doubt as to whether or not to so work within and chip the sides of said manhole with said hammer and chisel was reasonably safe . . . complained to said foreman that to so perform said work of chipping away the sides of said manhole without wearing goggles and without being provided with goggles to wear, rendered said work dangrous . . . and there requested said foreman to procure and furnish plaintiff with goggles that he might wear while engaged in said work . . . said foreman and vice-principal negligently and carelessly refused to procure or provide goggles as requested by plaintiff and negligently and carelessly ordered and required plaintiff to go ahead and perform said task and so chip away and enlarge the sides of said manhole without wearing said goggles and negligently and carelessly assured plaintiff that he could perform said work in safety and with reasonable safety to his person and without injury without wearing said goggles, and negligently failed to furnish plaintiff a reasonably safe place in which to work and reasonably safe appliances with which to work, in that it negligently failed to provide and furnish plaintiff with goggles to wear while performing said work.''

Appellant first filed a demurrer to this petition, on the grounds that it failed to state a cause of action and that several causes of action were improperly joined therein, which was overruled. Appellant then filed an answer containing a general denial, a plea of contributory negligence and a plea of assumption of risk. No pleadings were filed on behalf of the telephone company. Appellant asserts that it cannot be held in this action for a claim in tort against the telephone company but because of the view we take of the case it will not be necessary to discuss this contention.

Respondent's evidence tends to show that on November 1, 1926, he and two employees of the telephone company, Trigg and Conkle, were enlarging a manhole. This manhole was five or six feet across each way. Its sides, below the surface of the ground, were made of brick and mortar; ''brick and cement and concrete.'' The men first tore off the top with picks and shovels. This took two or three hours. The foreman of their job was not there when they finished. Respondent was then told by the general foreman of the telephone company to get a chisel and hammer and go down in the manhole and remove the brick. Respondent had only worked for the company two or three months and never had done that work before, but said that during the time he had worked there he had seen other men

working in manholes with a hammer and chisel and had noticed that "they always wore goggles in that kind of work." Trigg started to work in the hole and was wearing goggles. Respondent looked for goggles in the tool box but the only pair he could find was broken. He said to the foreman: "The goggles are broken and I don't want to get down there and work in the manhole without goggles. . . . I ought to have a pair of goggles, the other men has got them; I don't know whether it is right or not for me to get in there without them. . . . You ought to know." The general foreman said: "Well, go ahead, and go to work in there without them. It will be all right and I will get you a pair." Respondent testified: "I knew if other men wore goggles why I was supposed to have them. I didn't know wheher it was dangerous or not, but I supposed—that is the reason I asked the foreman to find out." It was twenty-five blocks to the place where the company kept their supplies. The general foreman traveled by street car and had a number of jobs over the whole city to oversee. Respondent went to work in the hole with Trigg. They would chip away mortar and concrete with a hammer and chisel and then pry out the bricks with the same tools. They put the loose bricks on the edge of the hole and Conkle, who remained on the ground and did not wear goggles, threw them away from the hole. After working an hour and a half or two hours, respondent said that while he was chipping and chiseling concrete and brick "a piece of something struck me in the right eye." It was for the impairment of sight of his eye from this injury that respondent brought suit.

Respondent had formerly been a blacksmith. He said that the only work he had previously done for the telephone company was pick and shovel work. As to the use of goggles prior to that time "when men were in the hole chiseling at that brick and mortar and cement," Conkle testified: "That kind of work, they are supposed to always wear goggles. . . . The Company furnished goggles." He stated that he had not always worn them but said he was supposed to. Another employee of the appellant, who testified as a witness for appellant said that it was customary for the men doing that work to use goggles; that goggles were provided in the tool box and they would use them "if they wanted to;" that "each tool box was supposed to have goggles in it, and it was largely up to the foreman of the gang to see they used them or didn't, as to what he thought about it."

Appellant had evidence of contractors that men, engaged in tearing down brick walls of buildings, did not wear goggles. Appellant also had the evidence of its general foreman that he did not allow men to wear goggles in such work in manholes, where there were cables, because the men could not see as well and might strike and ruin a cable. He said: "Goggles are used only when you use two men with sledges . . . working with a chisel, it (dust, etc.) won't fly to-

wards him. . . . We always took the top off of a manhole first, that leaves just the sidewalls to get at You can stand on the bottom of a manhole and work them the same as standing on the floor. You have a good place to stand there and have a chance to handle your hammer and your point . . . If he was holding a point on concrete and two men were striking with sledges—we had a pair of tongs to hold that with—he had to sit on the ground to hold it and we used to carry goggles for that, because a piece of that steel is liable to fly off and hit you in the eye." He denied having any conversation with respondent about goggles. There was conflicting medical testimony as to whether there was a condition due to an older injury to respondent's eye.

Appellant contends that its demurrer to the evidence should have been sustained because no cause of action was shown. It contends that the telephone company was under no legal duty to furnish goggles; that the risk of getting something in his eyes was incidental to the work respondent was doing himself and not the result of any negligence on the part of the telephone company, and that, therefore, neither a promise to furnish goggles nor an assurance of safety of the work without them could be a basis of liability or an avoidance of the defense of the assumption of risk. In determining the duty of respondent's employer under this evidence, we must remember that an employer is not an insurer of the safety of his employee. There is some danger of injury in every employment as there is in almost every human activity. An employer is not liable because there is danger in the employment, but only when he is negligent. [18 R. C. L. 545, sec. 60; 39 C. J. 260, sec. 381; 3 Labatt's Master & Servant, chap. 34.] Workmen's Compensation Acts have been widely adopted, providing compensation for injuries upon an insurance basis, because of the hardships when employees bear the whole burden of injuries, resulting from industrial activity, not occasioned by employers' negligence. However, for an employee to recover damages from his employer, his case must come within the principles of negligence. The general standard of care, by which the duty of an employer is determined, is that required of everyone in all relations with others, namely: The reasonable care of the average prudent person under similar circumstances. Situations vary greatly in different occupations and industries. Therefore, "the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business," when that is the usage of ordinary reasonable and prudent persons. [18 R. C. L. 547, sec. 61; 39 C. J. 331, sec. 450, p. 466, sec. 583; 3 Labatt's Master & Servant, 2403, sec. 906; see also Chapter 39.] Of course, no usage can make a practice, which is inherently unreasonably dangerous, reasonably safe (Texas & P. Ry. Co. v. Behymer, 189 U. S. 468, 47 L. Ed. 905, 23 Sup. Ct. 622) ; but often no other evidence, of what is a reasonably safe method of conducting

the complicated work of modern industry, is available except the methods tested by usage in similar work.

The more specific duties which arise from the general duty of an employer to use reasonable care are: To see that the place of work is reasonably safe; to see that suitable instrumentalities are provided; and to see that those instrumentalities are safely used. Otherwise stated, this latter requirement is that it is an employer's duty to provide a safe method of carrying on the work. The duty to furnish suitable instrumentalities does not require the employer to furnish the best, newest and safest appliances, but only to use due care to provide those which are reasonably free from danger. Likewise, the duty to provide safe methods of doing the work in which employees are engaged does not require the best methods or protective devices which might be devised but only reasonably safe methods. "The test is what is found to be reasonably safe by usage and is commonly and ordinarily used in other similar places, occupations and businesses." [Pevesdorf v. Union Electric Light & Power Co., 333 Mo. 1155, 64 S. W. (2d) 939, and cases cited; Knott v. Missouri Boiler & Sheet Iron Works, 299 Mo. 613, 253 S. W. 749, and cases cited; Williams v. St. Joseph Artesian Ice & Cold Storage Co. (Mo.), 214 S. W. 385; Spindler v. American Express Co. (Mo.), 232 S. W. 690; Coin v. Talge Lounge Co., 222 Mo. 488, 121 S. W. 1; see, also, O'Brien & Co. v. Shelton's Admr. (Ky.), 55 S. W. (2d) 352; see discussion of authorities in note 68 A. L. R. 1417.]

"In regard to the style of the implement or nature of the mode of performance of any work, 'reasonably safe' means safe according to the usages and habits and ordinary risks of the business. Absolute safety is unattainable and employers are not insurers. They are liable for consequences not of danger but of negligence, and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. No man is held by the law to a higher degree of skill than a fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way commonly adopted by those in the same business, is a negligent way for which liability shall be imposed." [Coin v. Lounge Co., supra.]

Here, the evidence does not show an unsafe place of work nor that any unsafe instrumentalities were furnished. There was nothing dangerous in the construction of the manhole, nor was it shown to be different from any other manhole. The chisel and hammer, the only appliances furnished for doing the work, were in no way defective. The complaint is not of what was furnished but that it was his employer's duty to furnish something more, not something to do work with, but as a protective device to protect him from the work he was

to do. Therefore, the part of respondent's charge of negligence relating to failure to furnish a reasonably safe place of work and reasonably safe appliances with which to work must be eliminated from consideration.

■ This leaves as the only basis for recovery the failure to provide a safe method of work. Boiled down, the charge of negligence is that the telephone company's foreman ordered the work done in a manner which was not a reasonably safe method of doing the work. In other words, that the protection of goggles was required in order to make the work of removing the brick sides of the manhole reasonably safe. Did the standard of care of ordinary, reasonable and prudent persons place upon his employer the affirmative duty of furnishing such a protective device for such work? How could respondent prove that it did except by showing that the ordinary usage of other employers was to provide goggles in that kind of work? There is no evidence in this record on that subject. The evidence is limited to when goggles were used by men in the employ of the telephone company. However, respondent does not plead a violation of a rule or special custom of the telephone company and did not attempt to submit any such question. [See Whitt v. Rand (N. C.), 123 S. E. 84.] The charge is that ordering respondent to work in the manhole without providing him goggles was negligence. That could only be negligence if it violated the standard of ordinary care. It could only violate the standard of ordinary care if the usage of average reasonable and prudent employers, in doing the same kind of work under similar circumstances, was to provide goggles, unless it was work so inherently dangerous that injury would be reasonably anticipated as the result of working without them.

We think it is clear that this was not such work. The question is not whether such an injury was possible but whether it would be reasonably anticipated. Respondent was not working with or near a machine that made chips or splinters fly. He does not claim to have been struck by something which other workman caused to fly. He said that he had not removed walls from manholes before but he was working with simple tools at work which anyone can understand. He was himself making everything fly that did fly, by his own actions, so that he could know when to expect it and could himself regulate it. He had been a blacksmith and knew how to use a hammer and had experience in looking out for himself from flying sparks. It appears that he had as full freedom of movement in the uncovered manhole as he would have had tearing down a wall on top of the ground. There was nothing to prevent him from standing up straight with his eyes above his work; the hole was five or six feet square; and only one other man working in it. [Wulfert v. Murch Bros. Const. Co. (Mo. App.), 232 S. W. 243.] Anyone who hits anything with a hammer takes some chance of it flying into his eye. That has happened,

when an experienced carpenter struck a nail to drive it into a board. [Anderson v. Forrester-Nace Box Co., 103 Mo. App. 382, 77 S. W. 486.] Would the average man, before using a hammer and chisel to loosen and pry out bricks, put on goggles? The duty of an employer to provide protective devices is usually confined to hazardous occupations and does not ordinarily apply to simple manual work with simple tools. As the work becomes more complicated and dangerous the employer's obligations increase. The employer's duty is to take additional precautions commensurate with increased risks. [39 C. J. 452, sec. 567; 18 R. C. L. 573, sec. 80.] Many cases, in which the danger from flying chips or splinters would seem from the evidence to have been greater than in the work respondent was doing in this case, have held that there was no legal duty upon the employer to furnish goggles. [Harbacek v. Fulton Iron Works Co., 287 Mo. 479, 229 S. W. 803; Wulfert v. Murch Bros Const. Co. (Mo. App.), 232 S. W. 243; Morris v. Wagner Electric Mfg. Co. (Mo. App.), 243 S. W. 424; Kolbow v. Haynes-Langenburg Mfg. Co., 318 Mo. 1243, 3 S. W. (2d) 226; Wexler v. Salisbury (Minn.), 98 N. W. 95; Emerson-Brantingham v. Growe (Ind.), 133 N. E. 919; Bilicki v. Staten Island Shipbuilding Co., 132 N. Y. Supp. 564; Richardson v. Southern Surety Co. (N. C.), 139 S. E. 839; St. Louis Southwestern Ry. Co. v. Weatherly (Tex. Civ. App.), 2 S. W. (2d) 555.] Saying that there is no legal duty to provide goggles means that it is reasonably safe to conduct the work without them; or in other words, safe according to the usages and habits of average reasonable and prudent employers, because there is neither evidence that they use them in such work under similar circumstances nor that the work was so inherently dangerous that we can say, without evidence of such usage, that injury would be reasonably anticipated as a result of working without them. Upon respondent's showing, we must say that he has failed to show that the telephone company carried on the work of enlarging the manhole in a manner which was not reasonably safe merely because it did not provide him with goggles.

What difference does the request of respondent for goggles and the assurance of safety in working without them make? Or the promise to get a pair, for that matter, although respondent did not plead it and did not submit the question of a promise or whether there his employer had reasonable time to fulfill it? If there was no negligence in failing to furnish them in the first place, because it was reasonably safe to conduct the work without them, how could an assurance that it was reasonably safe to work without them be a basis of liability? In cases like Ingram v. Prairie Block Coal Co., 319 Mo. 644, 5 S. W. (2d) 413, relied upon by respondent, the place into which the employee was directed to go was *not* reasonably safe. This court has taken the position, which is well sustained by authority, that if an appliance, a place of work, or a method of conducting the work is

reasonably safe, no liability for damages for negligence can be created by a promise to furnish something which will make it safer. [Coin v. Talge Lounge Co., 222 Mo. 488, 121 S. W. 1; see, also, Ryan v. Western Paper Box Co., 156 Mo. App. 693, 137 S. W. 1008; Lutgen v. Missouri Pacific Railroad Co. (Mo. App.), 294 S. W. 444; 25 L. R. A. (N. S.) 1180, note; 4 Labatt's Master & Servant, 3868, sec. 1347, and authorities cited, note 6.] Labatt raises a question about these cases, as does the Kansas City Court of Appeals in the Lutgen case, on the ground that "it might be very plausibly argued that if a servant apprehends danger from the use of an instrumentality, although it may not be specifically defective, and he continues to work in reliance upon an express promise of the master to furnish him with a more satisfactory appliance, the servant might recover for injuries due to the master's failure to keep his promise, the ground of recovery being placed specifically upon the breach of contract," and that "it is difficult to see any logical grounds for holding that the servant may not make it a part of his contract of employment by express terms that the master should change the character of the instrumentalities with which the servant is to work, and that upon the master's breach of such contract the servant cannot hold him liable." Whatever may be true of an action for breach of contract, an action for damages in tort must be based upon negligence. If the employer is not negligent, he is not liable in tort and it is an action in tort with which we are concerned.

█ The doctrine of assumption of risk is usually placed upon the contract theory, especially as to risks incidental to the work. It is the rule of the Coin case, supra, that the office of a promise to repair "is simply to rebut the defense of assumption of risk." [See discussion in note 61 A. L. R. 901; note 40 L. R. A. 781; 39 C. J. 786, sec. 986; 18 R. C. L. 696, sec. 180.] The same thing is undoubtedly true of a promise to change conditions in any other way or of an assurance of safety. [39 C. J. 801, sec. 1008; 18 R. C. L. 701, secs. 185-186; Labatt's Master & Servant, chapters 55-57.] Under our Missouri rule assumption of risk is not a defense at all where the risk arises from the employer's negligence. An employee's conduct with reference to such risks is considered as contributory negligence. [Goodwin v. Missouri Pacific Railroad Co., 335 Mo. 398, 72 S. W. (2d) 988, and cases cited.] This rule, at least, takes those risks out of the contract theory. Why should it be necessary to mix contract and tort liability, either in the plaintiff's case or in the defendant's defense? It does not seem to the writer to be common sense to say that an employee contracted with his employer that he could not sue if injured in a certain way, even though this employer was negligent, or that he was willing to be injured. Why is not the whole matter a question of negligence (original or contributory) or no negligence? We say "the moment negligence comes in at the

door . . . the doctrine of assumption of risk goes out at the window." [Patrum v. St. Louis-San Francisco Ry. Co., 259 Mo. 109, l. c. 121, 168 S. W. 622.] Risks incidental to the business, other than those arising from the employer's negligence, are the only risks assumed under the Missouri rule of assumption of risk. Therefore, the defense of assumption of risk, under our rule, really is the same as a denial of any negligence and this court has held that "a special plea that plaintiff assumed such a risk is unnecessary," because "if the plaintiff's suffering was solely from a risk incident to the business, he cannot recover, because it was a risk he assumed when he undertook the service, and this fact the defendant may show under his plea of general denial, because by so showing he disproves the allegation of negligence on his part." [Curtis v. McNair, 173 Mo. 270, l. c. 281, 73 S. W. 167.]

In considering the assurance and promise testified to in this case, suppose respondent had been employed to drive an automobile and had asked for goggles because he thought he might get dust in his eyes without them. If, although there had been a promise to furnish them or an assurance of safety in driving without them, respondent had got some foreign substance in his eye which caused an infection or injury, could it be contended that the employer was liable? It could not, because the employer would not be guilty of any negligence in failing to furnish goggles, since we know that reasonable and prudent persons do drive automobiles without goggles and consider that it is reasonably safe to do so. There is, of course, some risk of an automobile driver getting foreign substances in his eyes, which goggles would prevent, but it is a risk incidental to the work which does not arise out of his employer's negligence. Where there is no negligence there is no basis for holding the employer liable.

Our conclusion is that respondent's evidence was not sufficient to prove a cause of action.

The judgment is reversed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as opinion of the court. All the judges concur.