SHERIDAN CHOATE v. CITY OF SPRINGFIELD, a Municipal Corporation, and E. M. CLARK, Appellants.—124 S. W. (2d) 1127.

Division One, February 2, 1939.

936

*Farrington & Curtis, E. J. McNatt* and *Kirby W. Patterson* for appellants.

*Rex McPherson, Harold T. Lincoln, Frank B. Williams* and *William R. Collinson* for respondent.

HYDE, C.—This case, recently reassigned to the writer, is an action for damages for personal injuries. Plaintiff had a verdict for $10,000 and defendants have appealed from the judgment.

Plaintiff, upon a former trial, had judgment for $5000, which was reversed and remanded by the Springfield Court of Appeals. [Choate v. City of Springfield, 74 S. W. (2d) 869.] Reference is made to that opinion for the pleadings and discussion of the evidence on the first trial. It is contended here again that defendants were entitled to a directed verdict and that the Court of Appeals' decision was wrong in holding plaintiff made a jury case. Plaintiff's theory of negligence was that defendants furnished him an improper and unsafe tool (a flat-faced hammer intended for use in striking stakes, drills or chisels) for breaking rock, which he was ordered to do and attempted to do for the first time without knowledge (that the hammer furnished him was not a rock hammer) or experience as to the proper tools to be used. Defendants contend that plaintiff's evidence fails to show any negligence, because it goes no further than to show that a safer tool (than that furnished) is made, but fails to show that the tool furnished was not reasonably safe for the use intended.

Plaintiff testified that he was employed as a truck driver and had never broken rock before, but that on the day of his injury his foreman pointed to a hammer and said: "Take that hammer and help the boys break some rock." He said it "was the only hammer there;" that it was "flat-faced;" that "both ends were flat;" and that while he was using it on a rock "about all a man could lift (in size) a piece of it flew up and hit (him) in the right eye." Various types of hammers were exhibited and demonstrated before the jury. The hammer actually used by plaintiff was produced by defendants at the first trial but had been lost prior to the last trial.

Plaintiff had a number of witnesses who testified concerning the kind of hammers used for breaking rock and the effect produced by the use of various types of hammers. This testimony was, in part, as follows:

(Cope): "In breaking rock with a square flat-faced hammer spalls

fly from it in every direction, up and down and every way, on account of its being flat. A regular rock hammer which is adapted to the use of breaking rock is round, ball-shaped. The round-faced hammer kind of sands the rock. The bulge of the hammer throws the spalls out. With a round-faced hammer, all the face of the hammer does not hit the rock when it is struck, the part that is outside of the center is not in contact with the rock. There is a space on the outer edge of the face of a round-faced hammer, between the point where the rock is hit by the hammer and the outer edge of the hammer. If spalls fly they have a tendency to go down and out. There is nothing on a flat-faced hammer to keep the spalls from flying up and into the face of the man using the hammer.

(Davis): ''A rock hammer should have a round face, slightly oval—just so it is not absolutely flat. . . . It doesn't make any difference whether both sides are alike, . . . or whether one comes up in a wedge shape. . . . The wedge shape business on the back is used to split rock with.''

(Reynard): ''Striking a rock with that hammer (type produced by defendants) causes spalls to fly—more spalls to fly than a regular rock hammer, because it has a flat face. . . . The round face keeps them from flying up.''

(Hawley): ''A striking hammer is . . . used for striking drills or chisels. That is what it is made for. It has a kind of smooth, flat face. The reason why a rounded face, or ball-faced hammer is used among the trade for the purpose of breaking rock is, it is full in the center, and as you strike the stone that throws the slivers down instead of up. I will illustrate with this hammer. (Identified as a rock hammer.) When this center here hits the stone it powders it and throws them down, or in another direction instead of upward. . . . A striking hammer . . . throws the spalls in all directions. . . . It doesn't powder them up at all. It throws the slivers all directions.''

(Robertson): ''We ordinarily use a hammer that is a little bit full in the face, and one point on it is like a wedge shape, for breaking rocks. A striking hammer has a flat face on both ends. It is flat, and too light for rock breaking. The spalls will scatter and fly when the rock is broken. There are not many spalls from a regular rock hammer. The impact makes a sand and grinds it up.''

(Gibson): ''The tool ordinarily and customarily used for breaking rock has a cone face to it, and you strike the rock with the hammer, and it has a tendency to sand the rock, and the upper flange throws the sand away from you. With a flat-faced hammer, the rocks fly up and out. The flat-faced hammer goes by the name of a striking hammer. It is generally used for driving posts, stakes, chisels, something like that.''

(Martin): ''A flat-faced hammer is known among the trade as a

striking hammer. That is used for striking work, for striking a drill, or something like that. A striking hammer is not generally used among the trade for breaking rock, because they are flat-faced, and throw a lot of spalls. They throw more spalls than a stone hammer, with a bulging face. When you use a bulging-headed hammer on the rock the round part of the hammer usually hits the rock first, and the flange knocks the chips down instead of letting them fly."

Defendants' evidence was that the type of hammer, produced by them at the trial and identified as similar to the one used by plaintiff, was in common and ordinary usage throughout southwest Missouri for breaking rock. This was shown by testimony of contractors, miners, and a State Highway engineer. However, some of defendants' testimony tended to show that hammers used in breaking rock were usually rounded or convex to some extent rather than absolutely flat. Some of defendants' employees also testified that they did have hammers, on the job where plaintiff worked, for use in breaking rock different from those they used "for striking drills or pins or stakes." According to plaintiff's evidence, constant use in breaking rock tended to wear off the rounded face of a hammer and make it flat. According to defendants' evidence, such use tended to wear off the sides and make the face rounder. Defendants claimed that the reason for not using a so-called striking hammer, for breaking rock, was that this "would wear off the outside edges and make it unsafe for striking," but that there was no substantial difference in safety between different types in breaking rock.

The Court of Appeals based its ruling that plaintiff made a jury case upon Gray v. Doe Run Lead Co., 331 Mo. 481, 53 S. W. (2d) 877. In the Gray case, plaintiff's theory of negligence was that his employer furnished a hammer, which was not reasonably safe for striking a gad (to drive it into a crevice for the purpose of removing rock in a mine), because it was too rounded (due to use which caused the striking face "to be worn, rounded and battered"); and that this condition caused the hammer to glance off and injure him. This court there considered the rule that "the master is not bound to furnish the servant with the best or safest appliances," but held that plaintiff's testimony (as to the condition of the hammer and methods of work) "was sufficient to take to the jury the issue of defendant's alleged negligence in failing to provide reasonably safe tools."

A case perhaps even more similar on the facts is Loduca v. St. L.-S. F. Railroad Co., 315 Mo. 331, 289 S. W. 908. There plaintiff, a section hand, was engaged in removing the rails of a track. It was shown that "the usual method of cutting the nut from the end of a bolt was to place a chisel, eight to ten inches long, and about one and one-fourth inches wide (at the lower, or cutting, end of the chisel), in the center of the nut, which chisel was held in place by

one man, and another man would strike the chisel with a sledge hammer;" and that "the chisel being upon the upper edge of the nut, and being driven downward by the blows of the hammer, the evidence tends to show that particles of rust, steel, or iron would fall to the ground and not go upward." On the day of plaintiff's injury the chisel was broken and his foreman directed him to do this work with a spike maul. "By the use of this spike maul the end of the bolt would have to be broken off, or the nut so broken that it would fall from the rusted bolt. The evidence tends to show that slivers of rust, iron, or steel would fly upward and in other directions by this method." Plaintiff was struck in the eye by one of these slivers.

This court held that defendants' request for a directed verdict was properly refused, saying:

"There is clear evidence of a failure to furnish the usual tools for the doing of the work in hand. There is clear and pointed evidence that slivers and pieces did not fly upward from the parts when the men were cutting the nut with a chisel and sledge hammer, and that they did fly in all directions when the work was done in the other way. . . . This is not a case wherein is alleged the furnishing of a proper tool, but a defective one. . . . The strongest evidence that the foreman gave a negligent order and failed to furnish proper tools is that defendant itself had customarily used the sledge and chisel, as did also other railroads in the vicinity. The very physical facts would tend to show that there was less danger in driving a sharpened chisel through the rusty nut than there would be in the haphazard method of striking to break either the nut or the end of the rusted bolt." [See, also, Sager v. Samson Mining Co., 178 Mo. App. 503, 162 S. W. 762, cited by both parties hereto; 30 C. J. 329-332, secs. 449-450; 18 R. C. L. 589, sec. 92.]

Defendants cite Schaum v. Southwestern Bell Tel. Co., 336 Mo. 228, 78 S. W. (2d) 439, and Williams v. Terminal Railroad Assn., 339 Mo. 594, 98 S. W. (2d) 651. However, there was no contention in either of those cases, or in other similar cases cited, that the usually used tools were not furnished for doing the work in progress. Instead, the claims made were that the character of the work, even when done with proper tools, required special protection (in Schaum case), or warning (in Williams case) before proceeding to use such proper tools for the purpose for which they were intended. Here the claim is that a tool proper for one use was required to be used for a purpose for which it was not fitted, and for which it was not reasonably safe, when there was a tool available, devised for such purpose, which was safe to so use and was customarily so used by plaintiff's employer and other employers generally for such work.

Defendants also cite Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S. W. (2d) 723, which held that the defect in

the floor level, claimed in that case, was so slight (it could not be detected by the eye alone) that to allow recovery "would permit a verdict to be based upon mere speculation and not on a reasonable inference from any fact." However, the difference between a proper rock hammer and the one used, according to plaintiff's evidence, considered as favorably as it must be in ruling a demurrer, was a difference that was obvious and was known to plaintiff's foreman and to employers of that section generally, but was not known to plaintiff who had never done such work. The different types of hammers were before the jury so that they had a better opportunity to determine this matter than we have from what appears from the record on this appeal. Our conclusion is that the Court of Appeals correctly ruled the demurrer to the evidence and that, on substantially the same evidence on the last trial, we should rule likewise. Defendants further contend that the demurrer to the evidence should have been sustained for the reason that the evidence was too insubstantial and uncertain to justify finding that the alleged injury to plaintiff's right eye caused his blindness. That could only go to the amount of damages and not to the demurrer. [Kimmie v. Terminal Railroad Assn. of St. Louis, 334 Mo. 596, 66 S. W. (2d) 561.] It must be conceded that plaintiff's evidence shows that he was struck in the eye by a piece of rock and injured to some extent. He was entitled to recover whatever damage this did cause him, if he could convince the jury that it resulted from defendants' negligence.

■ Defendants further contend that plaintiff's submission, especially Instruction No. 2, was prejudicially erroneous and we think this contention is well founded. Instruction No. 2 was as follows:

"The court instructs the jury that in determining whether or not the hammer furnished by defendants to plaintiff was a reasonably safe tool to be used in breaking rock, you should take into consideration the common and general usages, if any, in the trade of rock breaking, in the same or similar localities.

"To make usage effective *as a defense* in this case, it should be shown to have been general, uniform, certain, and notorious, *known to the parties,* or so general in its character, and within the trade, that knowledge will be presumed.

"If, therefore, you find and believe from the evidence that the hammer furnished to plaintiff was a striking hammer and that such striking hammer was not in such common and general usage for breaking rock at the time in question, and that a striking hammer was an unsafe tool to use for such purpose, then defendants were negligent and did not use reasonable care for the protection of plaintiff when they instructed him to use, and furnished him, a striking hammer for use in breaking rock, if you so find.

"In this connection, you are instructed that the mere fact that some persons in the trade of rock breaking use a striking hammer for

that purpose is not sufficient to establish a general and common usage of the trade within the meaning of these instructions, but such common usage must be shown to be general, uniform, and certain, within the trade, and must also be notorious or generally known to persons within the trade, and *the burden of proving the existence of such common usage and knowledge in the rock-breaking trade rests upon the defendants.*

"In this connection, you are further instructed that if you find and believe from the evidence that plaintiff was not an experienced rock breaker, and had not been a follower of that trade and was unaware of the existence of such common usage, if any, and if you further find that defendant knew said facts, or by the exercise of reasonable care could have known the same, and if you further find and believe from the evidence *that such striking hammer was, notwithstanding its common and general use in the trade for rock breaking, if you so find, a dangerous tool to use for that purpose, then it was the duty of the defendants to have made known to plaintiff the danger,* if any, connected with the use of said hammer, and if you further find that defendants failed in their said duty to plaintiff, then plaintiff is not bound by said common usage, if any."

Plaintiff's Instruction No. 1 which purported to cover the whole case and directed a verdict only required (in addition to a finding of plaintiff's inexperience) the general finding as to the negligence charge that plaintiff was directed "to use a certain tool known as a striking hammer," and "that said striking hammer was not, *as defined in other instructions,* a reasonably safe tool to be used in the breaking of said rock, and that defendants knew, or by the exercise of ordinary care could have known of that fact." Plaintiff's only other instruction (in addition to 1 and 2) was on measure of damages.

Instruction No. 2, and the effect of Instructions 1 and 2 read together, is in direct conflict with and completely contrary to the ruling, as to essential findings in instructions in this case, made by the Court of Appeals on the former appeal. That opinion ruled that "an instruction which is intended to cover the whole case, as this one, should advise the jury that the test of reasonable care should be measured by the common usages of the trade." Instead of following this direction on the present trial, plaintiff's instruction told the jury that usage was a defense, and that the burden of proof on the issue was on defendants. While specific directions in some of defendants' instructions might cure merely too general findings set out in plaintiff's Instruction No. 1, these could not cure the positive misdirections above italicized in plaintiff's Instruction No. 2. Certainly the test of what has been found reasonably safe by usage is the test applicable to a claim, in the case of a simple tool not defective in any way, that better and safer tools should have been furnished. This is peculiarly a case in which usage is an essential element of plaintiff's case. A hammer is a simple tool and breaking

a rock with a hammer is not a complicated operation. Ordinarily almost anyone would use any kind of a hammer if he merely desired to break one rock, and this could not, by any stretch of imagination, be said to be an inherently dangerous act. Although the danger of breaking one rock, with any hammer would no doubt be very slight, breaking rock as an all day occupation with others working nearby is a different matter. The basis of plaintiff's charge of negligence is that the hammer furnished plaintiff was not reasonably safe for use in breaking rock as an occupation, because general experience, usage, and custom of employers in that trade showed that a round or bulging faced hammer was the proper tool to use, due to the great reduction thereby in amount of flying slivers. Therefore, plaintiff had the burden of proof to show such general usage in order to make a case of negligence in furnishing a flat-faced hammer to do such work. [Coin v. Lounge Co., 222 Mo. 488, 121 S. W. 1; 25 L. R. A. (N. S.) 1179; Pevesdorf v. Union Electric Light & Power Co., 333 Mo. 1155, 64 S. W. (2d) 939; Schaum v. Southwestern Bell Tel. Co., 336 Mo. 228, 78 S. W. (2d) 439; Smith v. Harbison-Walker Refractories Co., 340 Mo. 389, 100 S. W. (2d) 909; see, also, allegations of petition in Loduca v. St. L.-S. F. Railroad Co., supra.]

This instruction had other prejudicial faults. It was worded to make the issue what hammers were not commonly used, instead of requiring a finding that the type, which plaintiff says should have been furnished, was the kind usually and generally used by employers for such work. It also said the usage must have been known to plaintiff ("the parties") when all of plaintiff's evidence was that he did not know anything about it, and when it ended by stating that, if he was not warned, "then plaintiff is not bound by said common usage." These things make this instruction very confusing and misleading. This instruction also tells the jury that "it was the duty of the defendant to have made known to plaintiff the danger (of using the hammer) notwithstanding its common and general use in the trade for rock breaking" if they believed that the hammer used was "a dangerous tool to use for that purpose." Since there could be no basis for finding that any hammer described was inherently dangerous, this is a positively and completely wrong statement of the law. We said in the Pevesdorf case (333 Mo. 1155, 64 S. W. (2d) l. c. 948) that "the jury should not be permitted to guess and decide against the practice of the industry and knowledge of the art." This instruction specifically permitted them to do that very thing.

The judgment is reversed and the cause remanded. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All the judges concur.