Neva KINNARD, Plaintiff-Respondent,

v.

PLASTICS MOULDING COMPANY, a corporation, Defendant-Appellant.

No. 30680.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Motion for Rehearing or to Transfer to
Supreme Court Denied
Oct. 15, 1962.

Evans & Dixon, John F. Evans, St. Louis, for appellant.

Courtney S. Goodman, Michael B. Gershenson, St. Louis, for respondent.

JOHN J. KELLY, Jr., Special Judge.

This appeal, which came to the writer on reassignment, is from a judgment of the Circuit Court of the City of St. Louis entered on behalf of the plaintiff below in the sum of Four Thousand Eight Hundred ($4,-800.00) Dollars.

The action commenced by the respondent, hereinafter referred to as the plaintiff, was originally in two counts: one count for personal injuries sustained by the plaintiff while in the employ of the appellant, hereinafter referred to as the defendant, and the second count for loss of services and consortium. The jury returned a verdict on Count One for the plaintiff in the amount of $6,000.00 which was reduced by the trial court to $4,800.00, and found for the defendant on Count Two of the petition. The de-

fendant filed its appeal from the judgment on Count One of the Petition, and no appeal was taken from the judgment on Count Two of the petition.

The plaintiff's petition alleged that from sometime in 1952 until about May of 1956 she was an employee of the defendant, a corporation owning and operating a plastics manufacturing company producing various plastic products, and that during all of her period of employment she operated a moulding machine which used melamine plastic and phenolic plastic in powdered form; that in the use of said powdered plastics great quantities of plastic dust were caused to be created and generated, and that this dust came in contact with her hands, wrists, arms, and neck, causing her to be rendered ill and to suffer a severe dermatitis, as a result of which she was caused to lose wages and income in the sum of approximately $2,500.00 up to the time of trial; that her ability to work and earn a livelihood was permanently and greatly impaired and diminished, and that she had been caused to suffer pain, discomfort, itching, etc., and that all of these losses and complaints were permanent and would continue well into the future. The grounds of negligence pleaded were that the defendant had failed to provide the plaintiff with a reasonably safe place to work in that defendant failed to eliminate or control the dust created in the manufacturing process to which plaintiff was exposed; that defendant failed to eliminate or control noxious fumes and gases and dust created and emitted in the manufacturing process in which plaintiff was engaged; that defendant failed to provide plaintiff with adequate and protective garments and work clothing, including gloves, so as to prevent plaintiff from being unnecessarily exposed to dangerous and noxious dust, gases, and fumes from the plastic materials with which she worked; that defendant failed to instruct or warn plaintiff as to the dangers of her work and the means of avoiding such dangers; that defendant assured plaintiff that it was safe to work around and with said plastic materials when defendant knew or should have known that it was not; that defendant negligently allowed and permitted plaintiff to work around and with the plastic materials when defendant knew or should have known that such materials were dangerous and likely to cause injury, illness, or disease to plaintiff and defendant knew or by the exercise of ordinary care should have known that said injury, illness or disease would get progressively worse if plaintiff continued to work around and with the plastic materials.

Defendant's answer admitted that it was a corporation operating a manufacturing company producing plastic products and that the plaintiff for some time prior to May, 1956, was an employee of defendant as a machine operator. Defendant denied all other allegations of plaintiff's petition. As an attack on the jurisdiction of the court, defendant pleaded that the exclusive jurisdiction of the plaintiff's claim was under the Workmen's Compensation Law of the State of Missouri and that therefore plaintiff could not maintain this cause of action. Defendant further pleaded by way of estoppel that prior to the filing of this suit the plaintiff had filed with the Division of Workmen's Compensation a claim for the same injuries here in issue, and that therefore plaintiff was estopped from maintaining this cause of action.

The evidence viewed in the light most favorable to the plaintiff was that the defendant at all times relevant to the issues in this trial was a corporation engaged in the manufacture of plastic products and plaintiff was employed by the defendant as a moulding machine operator. In the performance of her duties plaintiff was required to use certain plastic powders which created dust which came in contact with her hands, wrists, arms and neck. While working at the moulding machine the plaintiff was in a standing position. She had a board with holes in it, and it was a part of her job to scoop plastic powder from a can by means of a scoop onto the board and into the holes in the board; she would then

level the plastic powder in the holes and then dust the residue off of the board. When the holes in the board were evenly filled, the board would then be placed in the hot moulding machine, a small handle on the bottom of the board pulled to release the plastic powder into the moulds, and the moulding machine closed by means of a lever. The powder would then undergo heat of approximately 290 degrees Fahrenheit for one and one-half to two minutes, after which the doors of the moulding machine would then be opened and the finished plastic product removed from the moulding machine. While so engaged the plaintiff wore cotton gloves with cuffs extending beyond the wrists on each hand. During her entire period of employment by the defendant, the plaintiff performed no other duties than those of a moulding machine operator, and she worked with no other plastic powders than the powders brought to her at a table near the particular moulding machine she operated.

The room in which plaintiff worked was a large one in which there were twenty to twenty-five moulding machines, and the particular shift on which she was employed had fifteen or sixteen operators working at the same time. Plaintiff's evidence was that she worked with two different plastic powders, one a white powder and the other a black or brown powder. These powders were identified as a melamine and phenolic plastic powder, both purchased from a reputable manufacturer of plastic powders. Melamine is a powder with a hydrocarbon base, its exact formula a trade secret known only to the manufacturer, containing some formaldehyde, and the phenolic plastic powder has a base of phenol and formaldehyde.

Plaintiff entered the employ of defendant on July 17, 1953, and after working about two months noticed a redness of her skin underneath her gloves and around her wrists. Within two or three months this condition spread to her forearms and neck. Her neck cleared up almost immediately but her arms and hands became worse, breaking out with small blisters which caused an itching and burning sensation and which extended to the elbow of her right arm and two or three inches above the wrist on the left arm. Plaintiff tried home remedies for a time and wore bandages for the oozing from the blisters. Finally she reported the condition to her foreman, who referred her to the company doctor for treatment. The company doctor treated her with shots and medicines for approximately three months without relieving the symptoms, and then referred her to a skin specialist. Under the treatment of the skin specialist the condition completely cleared up and she was discharged from further treatment. Two months thereafter the skin condition reappeared and she went to her own family physician for three and a half months, after which she was again referred to the company doctor, under whose care she remained for a month. By March, 1957 the skin condition had completely cleared, and up to the time of trial she had not noticed any recurrence.

Plaintiff called as her witness the general manager of the defendant, a graduate chemical engineer who was in charge of the plant operation. He stated that there was nothing harmful about phenolic or melamine plastics except in the case of one allergic to such compounds, but that he had read that any plastic might cause skin disorders or irritations to persons allergic to them.

Plaintiff's medical testimony was to the effect that melamine and phenolic plastics are "potential irritants"; that formaldehyde is a primary irritant. Medical witnesses produced by both the plaintiff and the defendant diagnosed the plaintiff's skin condition as a chronic industrial dermatitis due to exposure to the plastic powders she used in her work as a moulding machine operator in defendant's business. Dr. Tobias, a dermatologist had prepared a bibliography of scientific articles published between 1935 and 1959 relative to the effects of plastic powders on skin diseases for the plaintiff, and over defendant's objection plaintiff's counsel was permitted to read in-

to evidence and without any further development of the contents the title of two articles: "L. Schartz—Dermatitis from Synthetic Resins—Jour. Inv. Dermatology —6:239" and "Occupational Diseases of the Skin—Schwartz—Tulipan—Peck Leas and Febiger—Phila."

Plaintiff, through the testimony of four of her co-employees, offered evidence that at no time during the course of her employment had defendant kept posted in a conspicuous place in its plant a notice of its election to accept the Occupational Disease Amendment of the Missouri Workmen's Compensation Law, Section 287.060 RSMo 1959, V.A.M.S.

Plaintiff submitted her case to the jury on the theory that the defendant in the exercise of ordinary care knew or should have known that the plastic powders used by the plaintiff in the course of her employment as a moulding machine operator were reasonably likely to cause injury to the employee's skin; that in the course of her employment for the defendant the plaintiff had to handle and come in contact with such harmful plastic powders; that by reason thereof defendant failed to furnish plaintiff with a reasonably safe place in which to work; that defendant did not warn plaintiff that the plastic powders could have a harmful effect upon her skin and did not advise her of any precautions to be taken to avoid such harmful effect. The court also instructed the jury in Instruction No. 7 that it was the duty of the defendant to exercise ordinary care to discover the nature and general characteristics of the substances in its business with which its employees were caused to come in contact in their work; and that if the jury believed that the plastics mentioned in evidence were harmful to the skin of some of the defendant's employees and that there existed, for a long time prior to the time plaintiff sustained the injuries complained of, scientific knowledge of the harmful effects of such powders which could have been obtained by the defendant in the exercise of ordinary care, then the

defendant was charged with such knowledge and it was no defense to the defendant that it did not have actual knowledge that the powders were harmful to its employees.

Defendant complains that the trial court erred in (1) overruling its motion for a directed verdict and in failing and refusing to direct a verdict for the defendant; (2) in permitting plaintiff to read into evidence portions of plaintiff's Exhibit 2 (the bibliography prepared for plaintiff by Dr. Tobias); (3) in reading to the jury Instruction No. 7; (4) in permitting one of the medical witnesses to testify that the plastic powders here involved had a high degree of sensitivity, that they constituted "potential" irritants, and that plaintiff's skin condition was caused by exposure to these ingredients; (5) in permitting plaintiff to introduce into evidence Exhibit No. 3: Employer's and Insuror's Answer to Plaintiff's Compensation Claim; (6) in excluding the testimony of defendant's plant manager, George Rieman, that to his knowledge no other employee except the plaintiff had ever developed a skin irritation from handling the plastic powders and that none of them had made complaint or requested medical treatment for any such condition; (7) that the amount of the verdict, even after reduction by the trial court, is excessive.

It is well settled that it is the duty of an employer to exercise reasonable precaution to protect his employee against injury while engaged in the employer's business, and the employer is under an obligation to inform himself of those matters of scientific knowledge possessed by men of general education relative to the dangers and hazards involved in the use of substances and processes used in his employment, and to acquaint his employees with those dangers to which, in their ignorance, the employees might otherwise be subject, Marsanick v. Luechtefeld, Mo.App., 157 S. W.2d 537, l. c. 541. The defendant contends that there is no substantial proof that defendant knew or by the exercise of ordi-

nary care could have known that the plastic powders with which the plaintiff worked were reasonably likely to cause injury. For the plaintiff to make a submissible case under the theory she adopted, the trial court had to find sufficient evidence of defendant's knowledge, either actual or constructive, of the dangerous properties of the plastic powders used by plaintiff in the performance of her duties as a moulder prior to the time plaintiff sustained the injuries for which she here sought recovery.

Plaintiff called as her witness the general manager of the defendant. This witness, a graduate chemical engineer, testified that he had some knowledge that these powders used by the defendant might cause irritation to the skin of persons allergic to them. He testified that the powders were purchased from a responsible manufacturer and that their exact chemical composition was a "trade secret." He did know, however, that they contained phenol and formaldehyde in their constituent elements.

■ Plaintiff also called as witnesses medical experts, one of whom testified that the powders were "potential irritants" and that the *medical profession* has known for some years that powders used in the plastic industry could cause irritation to the skin. This same witness, a dermatologist, had prepared for the plaintiff a "bibliography" of articles on the dangers of plastic powders. Over objection, the plaintiff's attorney was permitted to read into the record the titles of two of these articles: "Dermatitis from Synthetic Resins * * *" and "Occupational Diseases", supra, without any further comment. This was apparently done for the purpose of showing constructive knowledge on the part of the defendant and a failure of defendant to carry out its duty to inform itself of those matters of scientific knowledge possessed by *men of general education* relative to the dangers and hazards involved in the use of substances and processes used in the course of the employment. However, the admission into evidence of this type of evidence was prejudicially erroneous inasmuch as it was not sufficiently identified to show that it contained information relative to the particular powders here in issue, and for the further reason that it was not shown that these articles contained "scientific knowledge possessed by men of general education" but rather that this was a medical bibliography. The record is devoid of any evidence that these articles were known to the trade generally, or that they were even available in the area. We do not believe that a plastic manufacturer is held to scientific knowledge possessed by the medical profession, and have not found a case which so holds. In Evinger v. Thompson, 364 Mo. 658, 265 S.W.2d 726, the court held that the employer was not held to knowledge available only to those having a special acquaintance with the subject involved. In this case, specialists in the field of dermatology might be expected to be familiar with the medical treatises the titles of which were read to the jury by plaintiff's counsel, but no employer is charged with this specialized knowledge unless it be shown that he had actual knowledge of the articles. Plaintiff relied on the case of Braun v. Roux Distributing Company, Mo., 312 S.W.2d 758, but that case, a products liability case, is not controlling in a master-servant case. The Supreme Court said in the Roux case, at page 763 of 312 S.W.2d:

> "* * * in manufacturing and distributing hair dye, the appellant is held to the skill of an expert in that particular business, 'to an expert's knowledge of the arts, materials and processes,' and is bound to keep reasonably abreast of scientific knowledge and discoveries concerning his field and, of course, is deemed to possess whatever knowledge is thereby imparted."

This same degree of skill is not required of an employer.

■ The plaintiff failed to offer substantial evidence that the defendant had either actual or constructive knowledge of the dangerous properties of the plastic powders used in the defendant's business, and there-

fore defendant's motion for directed verdict should have been sustained and judgment entered for the defendant in the trial court.

In view of the action of the court it is unnecessary to pass upon the other allegations of error raised by the defendant.

For the reasons stated heretofore the judgment of the trial court is reversed and this cause is hereby remanded with instructions to the trial court to enter judgment for the defendant.

ANDERSON, P. J., and RUDDY, J., concur.

WOLFE, J., not participating.