

Elwyn L. Cady, Jr., Independence, Mo., for appellants.

Thomas A. Sweeny, Kansas City, Mo., for appellees; Popham, Popham, Conway, Sweeny & Fremont, Kansas City, Mo., of counsel.

Before MATTHES, Chief Judge, and VAN OOSTERHOUT and LAY, Circuit Judges.

**Mr. and Mrs. Wilson MOWRY, Jr., Appellants,**

v.

**Mr. and Mrs. Ernest SCHMOLL, Appellees.**

No. 20344.

United States Court of Appeals, Eighth Circuit.

May 10, 1971.

LAY, Circuit Judge.

Plaintiffs appeal from a directed verdict in a personal injury suit arising under Missouri law. In December 1966, plaintiff Wilson Mowry, Jr., was hired by the defendants, Mr. and Mrs. Ernest Schmoll, to do farm labor on the latter's farm located in Cass County, Missouri. In March 1967, plaintiff was hospitalized with what was diagnosed as acute disseminated histoplasmosis, a systemic disease caused by a fungus. Plaintiff alleged that the defendants failed to furnish "a reasonably safe work environment" and "failed to equip him with appropriate protective devices" and that as a result thereof Mr. Mowry contracted the disease. The trial court directed a verdict in favor of the defendants at the close of the plaintiffs' case due to the absence of proof of any negligence. We affirm the judgment of the district court.

The plaintiffs' case is based on the fact that Mr. Schmoll asked Mr. Mowry to sweep out the attic in the house

where he and his family had resided on the farm. Mowry found the attic dirty and dusty. There were "quite a few" decomposed "animals" he thought were birds lying in the attic. Subsequent remodeling required that the plaintiff pull down plasterboard by hand from under an attic area not previously swept. Again there was much dust and dirt in the air. On neither occasion did the plaintiff wear a face mask or wet down the area prior to his work.

Plaintiffs claim that the defendants were negligent in failing to provide Mr. Mowry with a face mask when working in the attic. Plaintiffs assert that the defendants knew or reasonably should have known that the work was dangerous and that there was a likelihood that Mr. Mowry would contract histoplasmosis. One of plaintiffs' witnesses, Dr. Scott, testified that the disease was directly related to Mr. Mowry's employment.[1] Another witness, Dr. Cross, specializing in internal medicine, testified that the disease is "contracted by inhaling dust from an area in which histoplasmosis spores have been deposited in large numbers." He said that "[t]his is classically associated with bird droppings, either chickens, bats, pigeons, something of this nature." Close environment usually is compatible with contracting the disease.

The trial court found that the plaintiffs had failed to prove that the ordinary usage of other employers in the area was to provide farm hands with any protective devices for similar work. See Schaum v. Southwestern Bell Tel. Co., 336 Mo. 228, 78 S.W.2d 439, 443–444 (1934). The district court additionally held that there was no showing of actual or constructive knowledge by the defendants of any danger in sweeping out the attic or that the dust contained spores of the disease.

The Missouri Supreme Court observed in Schaum v. Southwestern Bell Tel. Co., supra, where the charge was that the employer failed to furnish goggles to an employee who was chipping at bricks inside a manhole:

"That could only be negligence if it violated the standard of ordinary care. It could only violate the standard of ordinary care if the usage of average reasonable and prudent employers, in doing the same kind of work under similar circumstances, was to provide goggles, unless it was work so inherently dangerous that injury would be reasonably anticipated as the result of working without them." 78 S.W.2d at 443.

The court additionally observed:

"Saying that there is no legal duty to provide goggles means that it is reasonably safe to conduct the work without them; or in other words, safe according to the usages and habits of average reasonable and prudent employers, because there is neither evidence that they use them in such work under similar circumstances, nor that the work was so inherently dangerous that we can say, without evidence of such usage, that injury would be reasonably anticipated as a result of working without them." Id. at 444.

The same rule was applied in Daniel v. Childress, 381 S.W.2d 539, 542 (Mo. App.1964), where the Missouri Court of Appeals observed:

"It is the duty of the master to use all reasonable means and precautions against injury to the employee which ordinary prudence and foresight would dictate in the light of the circumstances and existing knowledge * * * But the master is not an insurer of his employee. He is not liable for the *consequences* of danger, only that of his own (or vice princi-

---

1. Objection to this testimony was apparently sustained. The court's ruling was based on an alleged improper hypothetical question. Presumably the witness should have been allowed to answer under the authority of our later decided opinion in

Twin City Plaza, Inc. v. Central Surety and Ins. Co., 409 F.2d 1195 (8 Cir. 1969). For purposes of review, we assume that the doctors were allowed to answer the hypothetical questions thereby connecting the disease with the employment.

pal's) *negligence.* In regard to the use of means and methods adopted to do the work, the best and safest method is not required. The test is whether the method used is that which has been found to be reasonably safe by ordinary usage and custom."

See also Miller v. F. W. Woolworth Co., 328 S.W.2d 684, 688–689 (Mo.1959).

The guideline in master-servant cases in Missouri has long been whether the employer possessed superior knowledge of the danger involved. See McTurnan v. Bell, 398 S.W.2d 465, 469–470 (Mo. App.1965); Dye v. Peterson, 350 S.W.2d 272, 274–275 (Mo.App.1961); Hines v. Continental Baking Co., 334 S.W.2d 140, 146–147 (Mo.App.1960).

Somewhat akin, at least in principle, to plaintiffs' claim is the case of Kinnard v. Plastics Moulding Co., 360 S.W.2d 340 (Mo.App.1962). There a manufacturer was producing a product which contained potentially harmful ingredients. The plaintiff operated a machine which used melamine plastic and phenolic plastic in powdered form. This dust caused a severe dermatitis. She claimed the employer was negligent in failing to provide gloves and in providing a dangerous place for her to work. Plaintiff called as an expert a graduate chemical engineer who testified that the chemicals could cause dermatitis; another expert related that the medical profession had known for years that such powder in the plastic industry could cause irritation to the skin. The court held:

> "We do not believe that a plastic manufacturer is held to scientific knowledge possessed by the medical profession, and have not found a case which so holds. In Evinger v. Thompson, 364 Mo. 658, 265 S.W.2d 726, the court held that the employer was not held to knowledge available only to those having a special acquaintance with the subject involved. In this case, specialists in the field of dermatology might be expected to be familiar with the medical treatises the titles of which were read to the jury by plaintiff's counsel, but no employer is charged with this specialized knowledge unless it be shown that he had actual knowledge of the articles." 360 S.W.2d at 344.

The court ruled that the trial court should have directed a verdict for the defendant.

In the instant case the only evidence bearing on the defendants' superior knowledge of the disease of histoplasmosis and its etiology is a conversation with the Schmolls when one of the Mowry children was tested for the disease at school. Mr. Mowry testified that the Schmolls told them that the disease was caused by bird droppings and that it was common in the area. This evidence when viewed in its light most favorable to the plaintiffs cannot in any way constitute evidence that the defendants knew or should have known that the attic would contain spores from the fungus. In retrospect one might reasonably find that it did and that such bacteria was causally related to the plaintiff's unfortunate condition. However diligence is based on foresight, not on hindsight. It would have been only speculative for defendants to anticipate the reasonable likelihood of danger involved when they asked Mowry to clean the attic. The dusty condition of the attic, on the other hand, was nothing that Mowry need to have been warned about. He knew this condition as well as the defendants. Nor can there be claimed here that the order to clean the attic was a negligent command. Cf. Vaccaro v. City of St. Louis, 123 S.W.2d 230 (Mo.App.1939). The ordinary request by an employer to an employee to clean up a dusty place or room does not carry with it the duty to furnish a face mask or other protective respirator device. The rule might be different if there existed some superior knowledge by the employer of the reasonable likelihood of some specific danger.

We agree with the trial court's analysis that there exists insufficient evidence as to any negligence of the defendants.

Judgment affirmed.