June PATRICK et al., Plaintiff–Appellee,

v.

SOUTH CENTRAL BELL TELEPHONE COMPANY, Defendant–Appellant, Third Party Plaintiff–Appellant–Cross Appellee,

v.

CITY OF COLUMBIA, Acting Through the Board of Public Utilities, Third–Party Defendant–Appellee–Cross Appellant.

Nos. 78–1176 to 78–1178.

United States Court of Appeals, Sixth Circuit.

Argued April 10, 1980.

Decided Aug. 19, 1980.

Lon P. MacFarland, MacFarland, Colley, Blank & Jack, Columbia, Tenn., Mark D. Hallenbeck, Nashville, Tenn., for South Central Bell Tel. Co.

T. Edward Lawwell, James T. DuBois, Shelton, Lawwell & DuBois, Columbia, Tenn., for June Patrick, et al.

William B. Cain, Cain & Moore, Columbia, Tenn., for City of Columbia.

Before KEITH and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

KEITH, Circuit Judge.

This is an appeal from the judgment of the district court in an action which originally consisted of two distinct lawsuits and was tried in two separate parts. Both lawsuits were based on diversity jurisdiction. The first lawsuit dealt with plaintiff–appellee Patrick's wrongful death action against defendant–appellee South Central Bell Telephone Company. This action was tried to a jury and a verdict was returned in Patrick's favor in the amount of Two Hundred Thousand Dollars ($200,000) plus costs. The second lawsuit dealt with South Central Bell's third–party complaint against the City of Columbia to recover the judgment paid to Patrick under the terms of a Joint Use Pole Contract between the parties. Columbia counterclaimed against South Central Bell to recover, on behalf of its insurance carriers, various benefits that were

paid out to Patrick. This action was tried before the court sitting without a jury and the court denied recovery to each claimant.

South Central Bell Telephone Company now appeals the jury's finding that the direct and proximate cause of the accident was the negligence of South Central, and that Patrick was not contributorily negligent, as not supported by the evidence. South Central Bell appeals as well the district court's finding that Columbia was not liable for failing to trim the overhanging limb near one of the poles supporting the power lines and telephone cable, nor for the reasonable and nonnegligent actions of its employees on Patrick's crew.

We affirm the judgment of the district court, per the Honorable Frank Gray, Jr., in both actions.

I.

On the night of March 23, 1975, and in the early morning hours of March 24, 1975, there was a severe thunderstorm in and around the city of Columbia, Tennessee that caused electric service to be interrupted in several areas. Jerry Patrick, the deceased, was a lineman employed by the Columbia Power System who was on duty making repairs to the system's storm–damaged facilities. At approximately 5:30 a. m. on the morning of March 24th, a crew consisting of Patrick, Don Richardson, and Joe Duncan was dispatched in an aerial lift truck to check power line damage on Baker Road. On the poles of the damaged power lines, South Central Bell Telephone Company also maintains an underbuilt telephone cable pursuant to a contract with. the Columbia Power System. Sometime during the early morning hours of March 24th, a limb of a large oak tree had fallen across the line in question, damaging both the Columbia Power System's electrical line as well as the Telephone Company's communication cable.

Upon arriving at the scene of the damage, the crew determined that it would be desirable to de–energize the line before making the necessary repairs and that the proper way to accomplish this would be to return to U. S. Highway 31 to pull a cutoff switch. However, since Baker Road is narrow and the fallen treetop blocked easterly movement on the road, Don Richardson commenced backing the truck in a westerly direction on Baker Road until he reached a point just west of a county public road known as Burt Drive. After stopping the truck just past Burt Drive, Richardson pulled forward and turned right into Burt Drive. As the truck moved ahead, its aerial lift buckets struck the Telephone Company's cable, which, because of the fallen treetop down the road, was hanging four feet below its pre–storm height, or about nine feet ten inches above the ground. The power lines above the cable were then pulled into contact with the truck, causing the truck to become energized. The occupants were not aware that the truck had become energized, nor was the crew harmed because the rubber tires on the truck insulated it from the ground.

Immediately thereafter, Patrick, Duncan and Richardson heard air escaping from their right front tire. Not realizing that the truck was energized, Patrick, who was seated on the right side of the cab stepped out to investigate. In doing so, he came simultaneously in contact with the truck and the ground and was electrocuted when the current from the Columbia Power System's 7200–volt line ran through his body.

Following the accident, Plaintiff June Patrick, the surviving widow of Jerry Patrick, brought suit against the Telephone Company in the Maury County, Tennessee Circuit Court. She alleged that South Central Bell had negligently maintained a low cable over Burt Drive, prior to the storm in violation of Tennessee Code § 53–2311,[1] and that this was the proximate cause of Jerry Patrick's death. South Central Bell removed the case to federal court, and then impleaded the Power System as a third-party defendant. The third-party complaint

---

1. Tennessee Code § 53–2311 requires that a cable or line be maintained at a height of eighteen feet above a public road.

charged that the Power System was obligated to indemnify the Telephone Company for any damages that might be assessed against it under the terms of an Urban Joint Pole Use contract. The Power System in turn filed a counterclaim seeking indemnity for the benefits its insurance carriers paid to Patrick. Both the Telephone Company and the Power System sought reimbursement for their expenses and attorneys' fees, pursuant to the Joint Pole Use Contract.

## II.

South Central Bell Telephone Company raises three issues on appeal. First, appellant argues that the trial court erred, in violation of Rule 407 of the Federal Rules of Evidence, when it permitted Patrick to introduce evidence of changes made by the Telephone Company in the clearance height of the telephone cable subsequent to the accident. Secondly, appellant argues that the trial court erred in not disregarding the testimony of Woodruff, Patrick's expert witness, as it related to the effect on the proximate cause of the telephone cable's being severed. And finally, appellant argues that the trial court erred by failing to find that the direct and proximate cause of the accident and injury was the negligence of the deceased.

### a.

South Central Bell contends that the trial court erred in allowing testimony and cross–examination concerning changes made in the height of its cable after the accident. Specifically, South Central Bell argues that the admission of evidence that the height of the cable was thirteen feet ten inches at the site of the accident after it was restored to what apparently was its pre–storm and pre–accident condition was prejudicial to its case. South Central Bell argues further that the court should not have allowed cross–examination of its expert witness and rebuttal testimony by Patrick's expert which tended to show that the cable was subsequently raised in height by raising the point at which it was attached to a pre–existing pole by some two feet and

by adding a new pole between the two pre–existing poles.

Rule 407 of the Federal Rules of Evidence provides:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence and subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

To establish that South Central Bell's negligence was the proximate cause of her husband's death, Patrick argued that had the cable not been maintained before the storm at a height substantially below the required minimum of eighteen feet the accident would never have occurred. South Central Bell denied that the pre–storm height was inadequate, but argued in the alternative that the cable would have dropped to nine feet ten inches regardless of its pre–storm height. The testimony in question, introduced by Patrick, was Woodruff's statement that the telephone line was repaired after the accident to thirteen feet ten inches, its pre–storm height. Woodruff later testified on rebuttal, and South Central Bell's witness, Haynes, testified on cross–examination, that subsequent to the initial repairs, the cable was raised to twenty–one feet seven inches by raising the point at which it was attached to a pre–existing pole by two feet and by adding a new pole between the two pre–existing poles.

■ The district court ruled that evidence of the initial repair was properly admitted because it was not within the scope of Rule 407 since it did not correct the dangerous condition. We agree with the district court's analysis denying South Central Bell's motion for judgment notwithstanding the verdict or a new trial:

"The policy of the Rule [FRE407] is to encourage remedial measures to correct

faulty situations. Thus the Rule prohibits evidence of post–accident changes that make things different or better than they were at the time of an accident. It does not forbid evidence of repairs that render a situation the same as it was at the time of an accident. A repair that the proof shows had the effect of recreating the situation that existed previously is a proper subject for direct testimony."

South Central's second claim of evidentiary error is the admission of subsequent repairs. Rule 407 excepts from its general policy of exclusion evidence of subsequent repairs if offered for a purpose other than to prove negligence or culpable conduct in connection with the accident. "Other purposes" suggested in the Rule include proof of ownership, control, or feasibility of precautionary measures, if controverted, and impeachment.

At trial, while the court forbade Patrick from introducing evidence of the subsequent repairs, it admonished counsel for South Central Bell that if it tried to show that the cable was at a proper height at the time of the accident then the disputed evidence could be admitted. The trial court then permitted the evidence to be admitted on cross–examination and rebuttal testimony after South Central Bell's witness Haynes gave testimony from which the jury arguably could have inferred that the cable met the statutory requirement of eighteen feet before the storm caused it to drop.[2]

In denying appellee's motions for a judgment notwithstanding the verdict and a new trial, the district court found support for its decision to admit the evidence of a subsequent change in the cable height in Weinstein's Commentary on Rule 407.

"The second sentence of Rule 407 explicitly recognizes that evidence of subsequent remedial measures may be used for impeachment . . . But if the defendant has raised the question of . . . the nature of the condition at the time of the accident, then evidence of subsequent remedial measure is admissible not only for the limited purpose of impeachment but also as affirmative proof to rebut defendant's claims. In such circumstances, it would be manifestly unjust to deny

2.    Cross Examination of Haynes

Q. All right. Your attorney was on the job first. Why was the attorney on the job, Mr. Haynes?
Didn't you know you had a clearance violation from the very start?
A. I do not.
Q. Are you telling me, are you going to tell this jury right here today, here and now that in your opinion this cable was more than eighteen feet above Burt Drive prior to any change done there that morning?
A. I have no way of knowing that.
Q. Do you think it was? A. I do not know.
Q. As a matter of fact, Mr. Haynes, was it you or Mr. Brown, the attorney, that told Mr. Thrasher to raise it up an additional twenty–two inches out on this pole the very next day? A. No, sir.
By Mr. MacFarland: I object to that.
By the Court: It is perfectly competent. If it was high enough, why was it raised? Do you know if it was raised the next day?
A. I do not know.
Redirect Examination of Woodruff's Rebuttal Testimony
By Mr. Lawwell:
Q. Mr. Woodruff, if the present pole is sitting out there right now and had been there then and an attachment had been made on it where it is now approximately at twenty–one feet to twenty–two feet the cable would not have gotten below eighteen feet above Burt Drive after it got damaged?
By Mr. MacFarland:
May it please the Court, we object to this. We think it is not proper.
By the Court:
I think it is proper. As I understand your question, Mr. Lawwell, it is if the situation before this accident had been the same as it is now, that it with an intermediate pole at the height, and the tree had fallen across it where it did fall between nine and ten, would have reduced it? What would it have reduced it to? Would it reduce it to less than eighteen feet or less than thirteen feet ten inches?
A. The way it is now the cable would still clear the road by substantially more than the truck.
Q. Do you know it was raised?
By the Court: He doesn't know. Let's quit that.
Q. All right, sir. Do you know of any changes that have been made out there since this accident, Mr. Haynes? A. Yes. I have been there and there has been a pole added.

plaintiff the right to elicit such evidence by cross-examination or by direct proof." 2 J. Weinstein & M. Berger, Weinstein's Evidence § 407[04] (1976).

We hold that the district court was not in error in admitting evidence of subsequent remedial repairs in order to rebut the suggestions made by South Central Bell's witnesses that the cables were within the eighteen feet statutory minimum at the time of the accident. *See Northern Pacific Ry. v. Alderson*, 199 F. 735 (9th Cir. 1912); *Kenny v. Southeastern Pennsylvania Transportation Authority*, 581 F.2d 351 (3rd Cir. 1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979); *American Airlines, Inc. v. United States*, 418 F.2d 180 (5th Cir. 1969).

b.

South Central's second allegation of error is that the trial court erred in not disregarding the testimony of Patrick's expert witness, Woodruff, and directing a verdict for South Central on the grounds that Woodruff's testimony had failed to show that South Central's negligence in maintaining the cable at a clearance below the eighteen foot minimum was the proximate cause of Patrick's death. South Central's objection to Woodruff's testimony on proximate cause was that after Woodruff testified that he was familiar with the Rankine formula used for determining sag, he did not use the formula to calculate the effect on the cable of the limbs severing the cable. Woodruff stated that it was his opinion that the telephone cable necessarily must have been virtually the same height after it was replaced as it had been before the damage, and that since he knew the height by actual measurements, it was unnecessary for him to use the formula to determine the pre–storm height.

South Central's expert witness, Haynes, testified that South Central's negligence in maintaining a low cable did not proximately cause Patrick's death, because the severance of the cable would have reduced the line tension, resulting in a post–severance clearance of nine feet ten inches, regardless of the pre–severance height of the cable.

The jury heard the testimony of both experts. It is our opinion that credibility judgments of contradictory testimony properly supported by two expert witnesses are the province of the jury. It seems clear that the jury chose to credit Woodruff's opinion as to the cable's height, which provided the basis for the jury's finding on the proximate cause issue.

c.

South Central's third claim is that the jury's finding that Patrick and his fellow crew members were not contributorily negligent was not supported by the evidence, and that the trial court erred in denying its motions for a directed verdict, for a judgment notwithstanding the verdict, and for a new trial. South Central contends that the evidence that the failure of Patrick and his crew to observe the telephone cable proximately caused the accident is so clear and convincing that reasonable minds could not differ.

The appropriate standard for measuring the sufficiency of the evidence to direct a verdict under Rule 50 of the Federal Rules of Civil Procedure is whether there is evidence upon which the jury could properly support a verdict in favor of the party against whom the motion is made. See Wright and Miller, *Federal Practice and Procedure*: Civil Sec. 2525.

In *Howard v. J. N. Zellner & Sons Tr. Co.*, 529 F.2d 245, 246 (6th Cir. 1976) this court addressed this very issue:

The question of whether a plaintiff was contributorily negligent, and if so whether that contributory negligence was proximate or remote is a question of fact to be determined by the jury. *Frady v. Smith*, 519 S.W.2d 584 (Tenn.1974); *Holt v. Walsh*, 180 Tenn. 307, 174 S.W.2d 657 (1943); *Adams v. Brown*, 37 Tenn.App. 258, 262 S.W.2d 79 (1953). This question should be removed from the province of the jury only when "the facts are established by evidence free from conflict, and the inference from the facts is so certain

that all reasonable men, in the exercise of a free and impartial judgment, must agree upon it."

The testimony in the instant case was that the night was exceedingly dark, the cable in question was black, Patrick and his fellow crew members had patrolled the line with a spotlight, but their attention was directed toward Columbia's power lines and not South Central's underhanging cable, that they had not noticed the lowered condition of the cable as they passed by Burt Drive, had not observed any change in the lines back toward Burt Drive sufficient to put them on notice that the cable might be lowered, and did not see the cable before they attempted to drive their truck under the line.

■ The testimony was further to the effect that the deceased and his fellow crew members had no reason to suspect that the truck was energized at the time that Patrick stepped out of it to examine the tire. The facts as thus presented unquestionably made a jury question as to whether or not Patrick and his crew acted in a reasonable and prudent manner. *See Wilson v. Electric Power Board of Chattanooga*, 544 S.W.2d 92 (Tenn.1976) (holding that a jury question was presented on the issue of contributory negligence where the deceased plaintiff intentionally took hold of a live wire without first ascertaining whether it was de–energized.) We held, therefore, that South Central Bell's motions for a directed verdict, judgment notwithstanding the verdict, and a new trial, were properly denied.

### III.

South Central Bell appeals as well its adverse judgment in its action against the City of Columbia seeking indemnification for the $200,000.00 amount in damages assessed against it at the jury trial. The Telephone Company advanced two bases for Columbia's liability. First, South Central argued that, under the doctrine of respondeat superior, Columbia Power System must be charged with the negligence of Patrick's co–workers, Richardson and Dun-

can, whose actions South Central alleges proximately caused the accident. Secondly, South Central argues that the Power System negligently failed to trim the overhanging limb of a tree, the top of which fell over the road and caused the cable to sag.

a.

The district court held that South Central Bell's allegations of negligence as to Patrick's co–workers were without merit and therefore rejected its attempt to impute culpability to Columbia Power System through the doctrine of respondeat superior. The Court reasoned that the crew's failure to de–energize the power lines before proceeding down Baker Road could not constitute negligence because not all power facility damage requires de–energization, and because no evidence had been presented to convince the court that the men knew that it would be necessary to pull the cutoff switch until they actually saw the storm damage. Nor did the court think that the crew acted unreasonably in deciding to inspect the line damage before actually pulling the cutoff switch.

The court found further that the crew was not negligent in not noticing the drooping cable because the uncontroverted evidence was that visibility was poor at the time of the accident and the men had no reason to look for the telephone cable. Nor did the court find the crew negligent in pulling into Burt Drive without first checking their clearance because they had no cause to suspect that clearance would be a problem.

■ This court agrees with the result reached by the district court for two reasons. First, notwithstanding the fact that we might have reached a different result as to the contributory negligence of Patrick and his crew, we must defer to the findings made by the trier of fact unless such findings appear to us to be clearly erroneous. And secondly, this very issue of Patrick's and his crew's negligence was litigated in the first lawsuit—*Patrick v. South Central Bell*—and South Central Bell is collaterally estopped from raising the issue.

■ Such an offensive use of collateral estoppel was discussed extensively by the United States Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).[3] In *Parklane Hosiery Co.*, the Supreme Court set down guidelines for the application of offensive collateral estoppel and granted to trial courts broad discretion in determining when it should be applied. "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Parklane*, at 331, 99 S.Ct. at 651.

We hold that South Central Bell's action against Columbia Power System is an appropriate context in which to apply collateral estoppel offensively. The issues of Patrick's and his crew's negligence was decided implicitly in the first suit by the jury's assessment of damages against South Central Bell in favor of Patrick's widow. This is the very same issue which South Central sought to have relitigated in its suit against the Power System. Secondly, South Central had a full and fair opportunity to litigate this issue in its first suit against Patrick. We are satisfied that the jury's determination on the issue of Patrick's and his crew's contributory negligence is applicable to this action and conclusive on the issue.

b.

■ South Central's second claim of error is that the district court's finding that Columbia's failure to trim the overhanging limb near pole 10 was neither common–law negligence nor negligence per se was clearly erroneous, and that the court erred therefore in denying South Central's motion for a new trial or in the alternative to amend the judgment.

The district court rejected the Telephone Company's allegation of common–law negligence on the part of the Power System:

"The Telephone Company asserts that the Power System breached its common–law duty in permitting [the limbs of the oak tree to overhang the power line and telephone cable]. Although there was testimony that the trunk of the tree was hollow, the uncontroverted evidence is that the part of the tree which was blown down and which broke the power line and telephone cable was apparently healthy and had green foliage. The court therefore finds that the contention that the Power System was guilty of common–law negligence is not supported by a preponderance of the evidence."

The district court also rejected South Central's allegation that Columbia Power System was negligent per se when it found the statute on which South Central based its claim to be inapposite.[4]

We are of the view that the district court was correct in rejecting the various allegations advanced by South Central Bell as to Columbia Power System's negligence, and in holding that the Power System was not guilty of negligence. Accordingly we affirm the district court's holding that South

---

**3.** Offensive use of collateral estoppel permits a plaintiff to foreclose the defendant from litigating an issue that the defendant has previously litigated unsuccessfully in an action with another party. Defensive use of collateral estoppel permits a defendant to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost against another defendant.

**4.** Tennessee Code Annotated, Section 53–2311, incorporated by reference into the Urban Joint Pole Use Contract, provides:

"Where trees exist near supply–line conductors, they shall be trimmed, if practicable, so neither the movement of the trees nor the swinging or increased sagging of conductors

in wind or ice storms or at high temperatures will bring about contact between the conductors and trees."

The district court ruled that:

"There was no evidence that either the 'movement of the tree[s] or the swinging or increased sagging of [the] conductors in wind or ice storms or at high temperatures' would bring about contact between the tree and the lines. The tree was some sixteen feet at its base from the power line and had limbs overhanging, but not in danger of touching, utility lines, absent the limbs being separated from the tree by windstorm. The statute does not require that limbs be cut under such circumstances and is, therefore, inapposite."

Central Bell was not entitled to the indemnity recovery that it sought.

## IV.

■ The City of Columbia counterclaimed against South Central Bell to recover, on behalf of its insurers, various benefits that were paid to the widow of the deceased. To support its claim for damages, expenses, and fees, Columbia relied on several provisions of the Urban Joint Pole Use Contract. The pertinent provision of the contract is Section D, which provides:

"Where, on account of injuries of the character described in the preceding paragraphs of this Article, either party hereto shall make any payments to injured employees or to their relatives or representatives in conformity with: (1) the provision of any Workmen's Compensation Act or any act creating a liability in the employer to pay compensation for personal injury to an employee by accident arising out of and in the course of the employment, whether based on negligence on the part of the employer or not, or (2) any plan for employees' disability benefits or death benefits now established or hereafter adopted by the parties hereto, or either of them, such payments shall be construed to be damages within the terms of the preceding paragraphs numbered "A" and "B" and shall be paid by the parties hereto accordingly."

The district court denied Columbia the recovery it sought.

"Assuming, arguendo, that Columbia Power has standing to recover for its insurance carriers, the court is of the opinion that it is not entitled to the relief it seeks. Since Section D does not mention insurance carriers, the court feels that it did not intend to confer rights upon them. The remedy of Section D is available only to the contracting parties themselves.

It must be pointed out that it would be inequitable for the court to reach a different conclusion. If Columbia Power System were to prevail, it would mean in effect that USF & G, the Power System's Workmen's Compensation carrier, would be allowed a double recovery since under Tennessee Workmen's Compensation Law it has subrogation rights in Mrs. Patrick's award. It would mean further that the insurers that paid death benefits would have rights they would not otherwise enjoy. It is established that a company that pays benefits pursuant to a personal insurance policy, as Shenandoah and Aetna have done in this case, may not be subrogated to the rights of its insured or his beneficiaries against a negligent third party such as South Central Bell unless there is a provision in the policy to such effect. 3 Appleman on Insurance § 1675 (1967); see: 46 C.J.S. Insurance § 1209 (1946). In the instant case there is no evidence of such a provision."

We agree.

## V.

Finding no error in the judgment of the district court, in either the jury trial or the trial to the court, we affirm these judgments in all respects.

Since the Columbia Power System has no enforceable claim for damages against South Central Bell, its request for expenses and attorney's fees must be denied. Under the court's interpretation of the Joint Pole Use Contract, the Power System may not recover costs incurred in defending against South Central Bell's third-party complaint. Each party is to bear its own costs.

Affirmed.