James HANNAH and Marsha Hannah,
Plaintiffs-Appellants,

v.

MALLINCKRODT, INC.,
Defendant-Respondent.

No. 62325.

Supreme Court of Missouri,
En Banc.

April 26, 1982.

Rehearing Denied June 8, 1982.

Milton L. Schwarz, Klamen & Danna, Clayton, for plaintiffs-appellants.

Ben Ely, Jr., Phillip A. Franklin, St. Louis, for defendant-respondent.

ALDEN A. STOCKARD, Special Judge.

Plaintiff, James Hannah, filed a common law negligence action against his employer, Mallinckrodt, Inc. (hereafter Mallinckrodt), for injuries sustained in the course of his employment which he contends was not the result of an accident within the meaning of § 287.020.2 RSMo 1978. The trial court directed a verdict for Mallinckrodt and on appeal the Missouri Court of Appeals affirmed. On application of plaintiff the case was transferred to this court. We review the case as an original appeal. Mo.Const. Art. V, § 10; Rule 83.09.

■ The substance of plaintiff's petition is that Mallinckrodt failed to provide a safe place to work, safe methods of work, and safe appliances with which to work. His wife joined in a separate count for loss of consortium. The decisive issue before us is whether plaintiffs made a submissible case as to any of the alleged grounds of negligence. In ruling this issue we view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiffs. *Howard v. Lundry*, 591 S.W.2d 193 (Mo.App.1979). However, for plaintiffs to present a submissible case of negligence, they must present substantial evidence of every fact necessary to establish the liability of defendant, *Probst v. Seyer*, 353 S.W.2d 798 (Mo.1962), and it is a judicial function to determine whether negligence can be inferred from the facts, and whether plaintiffs' evidence establishes a submissible case. *Powell v. Watson*, 526 S.W.2d 318 (Mo.App.1975).

As an employee of Mallinckrodt James Hannah operated a device by which he loaded powdered silicic acid into drums. In order to perform this work he was required to stand under a large metal hopper, and from time to time he would stir the powder with a vacuum device called a "finger" which would remove the air and allow it to compress in the drum. He was six feet six inches in height, and because of the design of the hopper and his height he could not stand up straight, but he was required to work in a "bent, twisted and awkward manner" as he maneuvered the vacuum device.

Mr. Hannah testified that while doing the work exactly as he had been taught, and while in the necessarily required bent and twisted position, he sustained a sharp pain in his lower back, and that when he attempted to take a step his left leg went "numb like jelly." It was later established that he had a ruptured disc in his back. He testified that he did not slip, and that nothing fell or hit him.

Dr. Walter Lansche, a treating doctor, in answer to hypothetical question, testified that in view of the facts assumed there was "a direct cause and relationship between the [factual situation assumed] and the ruptured disc that Mr. Hannah had," and that it did not make any difference whether at the time of injury he was in a "slight twist or large twist." The testimony of Dr. Orlan Pflasterer was substantially to the same effect, and he also stated that based on a reasonable medical certainty, the factual circumstances and means of performing the work caused plaintiff's injuries.

George Gorbell, a consulting engineer who qualified as a safety expert, testified that in his opinion based on personal inspection, the machinery and methods of work employed by Mallinckrodt were not reasonably safe for the purpose they were used.

■ To establish negligence, as such, it must be shown that the employer has breached some duty. It has been held that that duty "demands the use of all ordinary care: 'To see that the place of work is reasonably safe; to see that suitable instrumentalities are provided; and to see that those instrumentalities are safely used.'" *Hightower v. Edwards*, 445 S.W.2d 273, 275 (Mo. banc 1969). See also *Hill v. Wainwright Industries, Inc.*, 522 S.W.2d 131 (Mo. App.1975). As stated in the Hightower case, "[A]n employer is not liable to his employee for injuries sustained in the course of his employment unless the employer was negligent, and that such negligence was the direct and proximate cause of the injury."

Mallinckrodt contends in this case that a plaintiff-employee has the burden in presenting a cause of action against his employer for negligence in failing to provide a safe place to work, or safe methods of doing work, to prove a deviation by the employer from custom or usage, or that no custom or usage existed. Mallinckrodt relies primarily on *Schaum v. Southwestern Bell Telephone Co.*, 336 Mo. 228, 78 S.W.2d 439 (1934); *Miller v. F. W. Woolworth Co.*, 328 S.W.2d 684 (Mo. banc 1959); *Hill v. Wainwright Industries, Inc., supra*; and *Johnston v. Sel-Mor Garment Co.*, 571 S.W.2d 691 (Mo.App.1978). Language in these cases admittedly supports Mallinckrodt's contention. For example, we find this in the *Schaum* case, 78 S.W.2d at p. 442:

> "[T]he duty to provide safe methods of doing the work in which employees are engaged does not require the best methods or protective devices which might be devised, but only reasonably safe methods. The test is what is found to be reasonably safe by usage and is commonly and ordinarily used in other similar places, occupations and businesses.' "

This issue has been the source of much litigation, and cases supporting each side of the issue may frequently be found in the same jurisdiction. See the well written Commentaries on the Law of Master and Servant by C. B. Labatt, Chapter XXXIV (1913). The principle that conformity to common usage is not conclusive in the master's favor emanates from a statement by Willes, J. in *Indermaur v. Dames*, Law Reps. 1 Ct. of Comm.Pleas, 274, 287 (1866), that "no usage could establish that what was in fact unnecessarily dangerous was in law reasonably safe as against persons towards whom there was a duty to be reasonably careful." Labatt then adds (§ 947):

> "That is to say, the position is taken, that custom furnishes no excuse, if the custom itself is negligent. In this point of view, the master's conformity to general usage is regarded merely as evidence tending more or less strongly to exculpate him from the charge of negligence. After it has been shown that the defend-

ant had complied with the usage of other employers in the same line of business, the question whether the particular instrumentality or method was reasonably safe still remains open, and, unless it is decided in the master's favor, he must idemnify the servant."

See also *Wabash R. Co. v. McDaniels*, 107 U.S. 454, 2 S.Ct. 932, 27 L.Ed. 605 (1883); and *Texas & Pacific R. Co. v. Behymer*, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905 (1903). In the latter case it is stated: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." This principle is the rule in many of the states. It is sufficient here to make reference to only a few. In *Winkler v. Power & Mining Machinery Co.*, 141 Wis. 244, 124 N.W. 273, 277 (1910), the court declared "There is no rule of law which will enable a master to escape the consequences of failing to exercise ordinary care to furnish his servants reasonably safe appliances by proving that all other masters in the same line of business and using the same appliances are equally negligent." In *Anderson v. Pitt Iron Mining Co.*, 108 Minn. 261, 121 N.W. 915 (1909), it was stated that "a person charged with negligence cannot excuse his misconduct by proving the same misconduct in others," and as stated in *Austin v. Chicago R. I. & P. Ry. Co.*, 93 Iowa 236, 61 N.W. 849 (1895), custom furnishes no excuse if the custom itself is negligent.

Notwithstanding the cases cited and relied on by Mallinckrodt we have fairly recent case authority in this State which supports the position of appellants. In *Thompson v. Kroeger*, 380 S.W.2d 339, 343 (Mo.1964), we find this:

> "In regard to the portion [of an instruction] relating to a custom in the industry, we think the applicable rule is that 'usual practices, usage or customs may, in a given case, be shown as evidence of due care, although they are not the standards of due care, neither do they conclusively demonstrate due care. Specifically, it may be said that the exercise

of due care requires precautions which a reasonably prudent employer would have taken in given circumstances, even though other employers may not have taken such commensurate precautions. What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not. * * * But, as stated, usual practices, usage or customs may, in given cases, be shown as evidence of due care."

Lending support, although somewhat indirect support, to the rule stated in the Thompson case is *Ricketts v. Kansas City Stock Yards Co. of Maine,* 484 S.W.2d 216 (Mo.banc 1972). Plaintiffs' judgment was reversed because the verdict directing instruction permitted a plaintiffs' verdict if the defendant's negligence "directly resulted in whole or part in injury to plaintiff," and in submitting failure to provide reasonably safe conditions for work it did not submit any specific working condition as not being safe. The term "negligence" was defined in the instruction as "the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." The court, in setting forth the requirements to be met by the plaintiff, did not include as an element that the jury find a deviation from industry custom or usage.

▪ We conclude that the result of the better reasoned cases is that proof that the employer deviated from the usual practices, usages, or customs in the industry, while admissible for evidentiary purpose, is not an essential element of an employee's cause of action against his employer for failure to provide a safe place to work or for failing to provide suitable and safe instrumentalities. Cases relied on by Mallinckrodt to the contrary should no longer be followed.

Mallinckrodt contends that the trial court did not err in directing a verdict in its favor because the court "could have found" that Mr. Hannah was contributorily negligent as a matter of law.

▪ When he was injured Mr. Hannah was performing the work assigned to him in the precise manner he had been instructed. The danger to him from performing the work in that manner was latent; it was not so obviously dangerous that no reasonably prudent person would have refused to obey instructions to perform the work in that manner. The general rule is that even where there is evidence of knowledge on the part of the employee of the danger of his place of work, or of the machinery with which he is provided, the question whether his acts and conduct in the light of such knowledge constitute contributory negligence is a question of fact for the jury, unless the evidence is such that all reasonable men would conclude that he was guilty of negligence which contributed to the casualty. "He will not be declared guilty of contributory negligence as a matter of law unless the danger is so glaring, open and obvious as to threaten immediate and almost certain injury, or that a man of ordinary prudence would not attempt to occupy the place or use the machinery." *Keeney v. Callow,* 349 S.W.2d 75, 81 (Mo.1961). See also *Bollman v. Kark Rendering Plant,* 418 S.W.2d 39 (Mo.1967); *Wilson v. White,* 272 S.W.2d 1 (Mo.App.1954).

Under the circumstances we have here, whether Mr. Hannah was contributorily negligent was an issue for the jury.

Mallinckrodt also asserts that the directed verdict in its favor was proper because the court "could have found" that plaintiffs' claim for injuries is covered by the Missouri Workmen's Compensation Law to the exclusion of all other remedies. See § 287.120 RSMo 1978.

▪ The Workmen's Compensation Commission has exclusive and original jurisdiction over claims for injuries covered by the Act, and it also has original jurisdiction to determine the fact issues establishing jurisdiction. *Sheen v. DiBella,* 395 S.W.2d 296 (Mo.App.1965). In this case plaintiffs filed a claim with the Workmen's Compensation Commission, but when Mallinckrodt denied the injuries were the result of an accident they did not pursue the matter before the

Commission but filed this suit. There has been no determination by the Commission of the issue of jurisdiction.

In the event of a retrial of this case the trial court should be guided by the ruling in *Sheen v. DiBella*, supra at p. 303. In that case the court said this:

"But where the applicability of the Act is in real dispute and where the evidence, including the admissions, is not so overwhelming as to pass from a disputed question of fact to an unalterable legal conclusion, does the circuit court have jurisdiction to make factual findings determinative of the issues even in a suit brought before it originally or should it refuse to accept jurisdiction until the Commission has acted? If in such situations, the circuit court accepts all such cases brought before it and attempts to act with finality when the issue of jurisdiction is raised, is it not assuming concurrent jurisdiction with the Commission and in essence nullifying the legislative intent and enactment which placed exclusive original jurisdiction with the Commission? We find no Missouri case holding that the courts have such concurrent jurisdiction but find many to the effect that the Commission has exclusive and original jurisdiction."

The judgment is reversed and the cause remanded.

RENDLEN, SEILER, MORGAN, HIGGINS and BARDGETT, JJ., concur.

DONNELLY, C. J., dissents.

WELLIVER, J., not sitting.