Linda ANDERSON, Derriel Anderson, Appellants,

v.

James E. MALLOY, Peter Zes, Edward J. Gibson, Appellees.

No. 81–1923.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1982.

Decided March 9, 1983.

Rehearing Denied April 25, 1983.

---

Wuestling & James, R.C. Wuestling, St. Louis, Mo., for appellees.

Richard E. Schwartz, Clayton, Mo., for appellants.

Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.

LAY, Chief Judge.

Linda and Derriel Anderson appeal from a judgment on a jury verdict rendered against them in the United States District Court for the Eastern District of Missouri. The Andersons claim the trial court abused its discretion in excluding portions of the plaintiffs' evidence. We agree, and accordingly vacate the district court's judgment and remand the case for a new trial.

In January and February of 1979, the Andersons were guests in a motel in the St. Louis area owned and operated by the defendants, Malloy, Zes, and Gibson. On the evening of February 7, 1979, while Linda Anderson was alone in the motel room, an unknown assailant forcibly entered the room and assaulted and raped her.

The Andersons thereupon filed suit alleging diversity jurisdiction [1] in federal district court in St. Louis, alleging that the defendants negligently failed to provide them with reasonably safe lodging, that the defendants breached an express warranty to provide reasonably safe lodging, and that the defendants fraudulently misrepresented the level of security provided to the motel's guests.

During the trial, the district court made four evidentiary rulings excluding portions of the plaintiffs' evidence. The court refused to admit (1) the testimony of a woman who was raped at the defendants' motel five months prior to the time Linda Anderson was raped, (2) evidence that an apartment complex adjoining the defendants' motel was a "breeding ground for crime," (3) evidence of security measures taken by other hotels and motels in the area of the defendants' motel, and (4) evidence that, after Linda Anderson was raped, the defendants installed safety chains and "peep holes" in the entrance doors of the motel rooms.

The motel owners argued in defense that they had done everything reasonably necessary to make their motel secure. The defendants also affirmatively claimed that Linda Anderson's injuries were proximately caused by her own negligence in opening her door in a strange city to a person she did not know.[2]

---

1. The plaintiffs were residents of Alabama at the time of the trial.

2. Linda Anderson testified at trial that she heard a knock on the door. When she asked who was there, she heard a muffled voice that she thought was that of her husband. When she opened the door slightly, the assailant asked her a few questions and then forced his way into the room.

The jury returned a verdict for the defendants, and the district court entered judgment on the verdict.

## I. Testimony of the Prior Rape Victim.

The district court refused to admit the testimony of a woman who had been raped at the defendants' motel five months prior to the assault on Linda Anderson, in circumstances similar to the assault on Mrs. Anderson. The district court ruled that the evidence would be too prejudicial to the defendants, and accordingly excluded the evidence.[3]

Although the general thrust of the Federal Rules of Evidence may be read to favor admission, *United States v. Dennis,* 625 F.2d 782, 797 (8th Cir.1980); *United States v. Day,* 591 F.2d 861, 878–79 (D.C.Cir.1978),[4] we nonetheless find no abuse of discretion by the district court in its ruling.

The plaintiffs offered the testimony of the other rape victim for the purpose of establishing that Linda Anderson was not contributorily negligent in opening her door to her attacker, since the prior rape victim also opened her door under similar circumstances. However, the prior victim's testimony was not relevant to the plaintiffs' case on this point. What another person may have done even in similar circumstances is not relevant to whether another party in a given case was negligent.

## II. Evidence of the Adjoining Apartment Complex.

The district court also refused to admit the plaintiffs' proffered evidence that the apartment complex adjoining the defendants' motel was a "breeding ground for crime." The plaintiffs argue on appeal that the evidence was relevant to show that the defendants reasonably should have foreseen the attack on Linda Anderson. The trial court ruled that the evidence was not sufficiently relevant to justify admission. We agree.

The court did allow the plaintiffs' attorney to read into the record one-sentence summaries of seven crimes that had taken place at the defendants' motel from July 1977 to the time of the assault on Linda Anderson in February 1979. This evidence was admitted specifically for the purpose of showing foreseeability by the defendants of the assault on Linda Anderson. In these circumstances we find no abuse of discretion by the district court.

## III. Evidence of Security Measures at Other Hotels and Motels.

The plaintiffs sought to introduce evidence of security measures taken by other hotels and motels in the area of the defendants' motel, for the purpose of showing whether the defendants had fulfilled their required standard of care in providing security for their guests. The district court excluded the evidence, holding that because of the unusual physical layout of the defendants' motel, evidence of the other hotels' security measures was not relevant.

The defendants' motel originally was an apartment complex which the defendants

---

**3.** *See* Fed.R.Evid. 403. As we note in section II of this discussion, the trial court did allow the plaintiffs' attorney to read to the jury one-sentence summaries of seven crimes that had recently occurred at the defendants' motel, including a statement that in September 1978 a female guest had been raped in her room at the defendants' motel. The plaintiffs' attorney had prepared a deposition exhibit containing a list of 187 occurrences of criminal activity at the defendants' motel from January 13, 1975, to the date Linda Anderson was raped, February 7, 1979; however, the plaintiffs' attorney was permitted to mention only the seven crimes.

**4.** See 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 403[03]:

The usual approach on the question of admissibility on appeal is to view both probative force and prejudice most favorably towards the proponent, that is to say, to give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value. The trial court will lean towards this approach since the thrust of the Federal Rules favors admissibility. But ... the trial judge should be able to weigh probative force and prejudice fairly accurately in the light of the special trial conditions and circumstances that he can observe.

*Id.* at 403–25 to 27 (footnotes omitted).

converted into short and long term motel accommodations. The grounds covered over 20 acres, and the motel was composed of 299 one, two and three bedroom units, all of which were on the ground floor, and all of which had separate entrances opening to the outside. There were no interior hallways or stairways connecting the units, nor was there any restaurant, lounge, or similar business on the premises.

■ Evidence of the customs and practices of a trade or industry does not establish the legal standard of care to which a party is held. The standard of care is the same whether or not a person conforms to the practices of others.[5]

■ Nor does the fact that a person deviated from or conformed to an accepted custom or practice establish conclusively that the person was or was not negligent. However, custom or practice, if sufficiently similar to the situation in issue, generally has evidentiary value and may be considered by the trier of fact on the question of negligence. *Bahamas Agricultural Industries Ltd. v. Riley Stoker Corp.,* 526 F.2d 1174, 1178 (6th Cir.1975); *Baker v. S/S Cristobal,* 488 F.2d 331, 333 (5th Cir.1974); *Princemont Construction Corp. v. Smith,* 433 F.2d 1217, 1220 (D.C.Cir.1970); *Westborough Country Club v. Palmer,* 204 F.2d 143, 147 (8th Cir.1953); *Hannah v. Mallinckrodt, Inc.,* 633 S.W.2d 723, 726 (Mo.1982) (en banc); W. Prosser, *Handbook of the Law of Torts* § 33, at 168 (4th ed. 1971).

The precise question in this case is whether the defendants' motel was sufficiently similar to other area hotels and motels to make relevant the evidence of the security measures of the other hotels and motels.

■ For evidence of custom and practice to be relevant the circumstances surrounding the usual practice need not be

precisely the same as those surrounding the situation at issue; it is sufficient if they are substantially similar.[6] The defendants' motel and the other hotels and motels serve the same purpose in the same way, they are located in the same area of the same city, and customers rely equally on each hotel and motel to provide proper security. We do not find that the difference in physical layout between the defendants' motel and the others vitiates the relevance of evidence concerning the security measures of the others. Such difference in layout may warrant an instruction to the jury that it may consider the difference in weighing the evidence, but it does not justify a ruling that the evidence is not relevant as a matter of law. The trial court generally has broad discretion in deciding whether to admit or exclude evidence, but as the Fifth Circuit has noted, "that discretion does not sanction exclusion of competent evidence without a sound, practical reason." *Ramos v. Liberty Mutual Insurance Co.,* 615 F.2d 334, 340 (5th Cir.1980), *cert. denied sub nom. Rucker Co. v. Shell Oil Co.,* 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981).

■ We find that the trial court erred in excluding evidence of the security measures of other area hotels and motels. However, because of the rather tangential relevance of evidence of custom and practice, we do not find this ruling by itself to be so prejudicial to the plaintiffs that it alone would require us to remand the case for a new trial.

## IV. *Evidence of Subsequent Remedial Measures.*

The plaintiffs attempted to introduce evidence to show that, after Linda Anderson was assaulted and raped, the defendants installed safety chains and "peep holes" on the doors of all units in the motel. The

---

5. *See Texas & Pac. Ry. Co. v. Behymer,* 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905 (1903) ("What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."); 2 J. Wigmore, *Evidence* § 461, at 593 (J. Chadbourn rev. 1979).

6. In *Broadview Leasing Co. v. Cape Central Airways, Inc.,* 539 S.W.2d 553 (Mo.Ct.App. 1976), the court held that the "similarity that is required is a similarity in essential, not precise, circumstances." *Id.* at 563.

trial court refused to admit the evidence on the ground that Federal Rule of Evidence 407 "generally prohibits" the admission of such evidence.

 Rule 407 prohibits the admission of evidence of subsequent remedial measures when the evidence is offered to prove negligence or culpable conduct.[7] However, the rule expressly does not require the exclusion of such evidence when offered for another purpose. Of course, to be admissible any evidence not excluded by rule 407 must still be relevant (Fed.R.Evid. 402) and its probative value must outweigh any dangers associated with its admission (Fed.R.Evid. 403).

The plaintiffs assert on appeal that the defendants controverted the feasibility of the use of peep holes and safety chains. Thus, the plaintiffs argue that the evidence comes within the exception of rule 407. Although the trial court held to the contrary, we find that the defendants did affirmatively controvert the feasibility of the chain locks and peep holes. We conclude that the trial court committed a prejudicial abuse of discretion when it excluded the evidence.

The first witness called by the plaintiffs was the defendant, Malloy, one of the owners of the motel. Malloy was asked by the plaintiffs' counsel about the security measures taken by the defendants since they purchased the motel in 1974, but he was not asked about the absence of peep holes or chain locks on the doors. On cross-examination defense counsel opened up the issue in the following exchange:

Q. We've already talked about the additional lighting that was installed. Did [the village police chief] indicate to you anything about putting these peepholes, as they are called, in the solid core doors?

A. He felt like we had six-foot picture windows right next to the door. If we'd put peepholes in, it would be false security.

Q. Did you follow the officer's recommendation in that regard?

A. Yes. We did not put the peepholes in at that time.

Q. Did he indicate to you anything about these chains you see on doors on occasion?

A. He felt like they were unnecessary, also. False security.

On redirect, in rebuttal, the plaintiffs' counsel then asked:

Do I understand, [the police chief] indicated to you that it wouldn't be feasible to put in peepholes and chain guards on the front doors?

Mr. Malloy replied:

A. At that time he felt like the picture windows were adequate for—that the peephole would be sort of a false security, because they could look out these picture windows and see the door, the step there.

Whether something is feasible relates not only to actual possibility of operation, and its cost and convenience, but also to its ultimate utility and success in its intended performance. That is to say, "feasible" means not only "possible," but also means "capable of being … utilized, or dealt with successfully." *Webster's Third New International Dictionary* 831 (unabridged ed. 1967); *see Black's Law Dictionary* 549 (5th ed. 1979) ("reasonable assurance of success."). *See also American Airlines, Inc. v. United States,* 418 F.2d 180, 196 (5th Cir. 1969) (defendant's witness had testified that an airplane altimeter in issue was "feasible and safe and that there was no reason to change it"; plaintiff allowed to show that defendant changed altimeter design after crash).

---

**7.** Rule 407 states:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed.R.Evid. 407.

For the defendant to suggest that installation of peep holes and chain locks would provide only a false sense of security not only infers that the devices would not successfully provide security, it also infers that the devices would in fact create a lesser level of security if they were installed. With this testimony the defendants controverted the feasibility of the installation of these devices, because the defendant Malloy in effect testified that these devices were not "capable of being utilized or dealt with successfully."

The defendants' counsel took advantage of the situation and in closing argument to the jury said that the evidence showed that the defendants in providing security "did everything anybody recommended that they do. What more can they do? . . . Is there any evidence from any reliable source that [the defendants] could or should have done anything more?" With such a suggestion implanted in the minds of the jurors by Malloy's testimony, the plaintiffs' counsel had every right to rebut that suggestion by showing that the defendants had in fact installed these devices after Linda Anderson was raped.

The plaintiffs were entitled to show affirmatively that these devices were feasible, and furthermore to impeach the credibility of the defendants by showing that, although the defendants testified that they had done everything necessary for a secure motel, and that chain locks and peep holes would not be successful, they in fact took further security measures after Linda Anderson was raped, and in fact installed the same devices that they testified could not be used successfully. Under rule 407 the evidence could not be used by the plaintiffs to prove the defendants' negligence, and a limiting instruction would warn the jury of this restriction in its admission. But we think it was an abuse of discretion for the trial court to refuse to admit the only evidence that would effectively rebut the inferences created by the defendants. *See Patrick v. South Central Bell Telephone Co.,* 641 F.2d 1192, 1196–97 (6th Cir.1980) (trial court allowed evidence of subsequent repairs to telephone line after the defendant inferred that line was not placed below statutory minimum height requirements); *Kenny v. Southeastern Pennsylvania Transportation Authority,* 581 F.2d 351, 356 (3d Cir.1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979) (defendant inferred that lighting was adequate on railroad platform at time plaintiff was raped; plaintiff allowed to show that, after the rape, defendant installed new lighting fixtures); *American Airlines, Inc. v. United States, supra,* 418 F.2d at 196. *See also* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 407[05], at 407–23 to 24 (1981).

We find the trial court committed prejudicial error in the ruling discussed above; accordingly, we vacate the judgment of the district court, and remand the case for a new trial.[8]

JOHN R. GIBSON, Circuit Judge, concurring in part and dissenting in part.

I concur with Parts I, II and III of the majority opinion. I respectfully dissent from Part IV of the majority opinion dealing with evidence of subsequent remedial measures and, therefore, would affirm the judgment for defendants.

I disagree that the testimony in this case involves a question of feasibility. This line of Malloy's testimony commences:

Q Did you also, sir, before you went into operation, meet with a representative of the Village of Edmundson Police Department?

A Yes, I did.

Q And did he also make recommendations to you as to what could or should be done insofar as security is concerned?

---

8. Since the issues are to be retried and to avoid error on further retrial, we add the following comment. When the security experts advised defendants that security locks and peep holes would be "false security" and the defendants allegedly followed such advice, the defendants as an historical fact controverted the feasibility of such devices. Thus, once the plaintiffs demonstrate this evidence contained in Malloy's prior testimony, plaintiff should be allowed to affirmatively prove defendants' subsequent use of the devices.

A Yes, he did. Uh-huh.

Solid core doors, Triple A door locks, and bar pins in sliding doors were all recommended. The witness was asked:

Q You did follow his recommendations and you did do that?

A We did, yes.

The testimony set out on page 1213 of the majority opinion followed. There was then testimony of a recommendation of an additional guard from 11:00 p.m. to 7:00 a.m.

When plaintiffs' offer of proof was made, the district court stated:

There is no question of feasibility in this situation. He said he went on the recommendation, whether it's good, bad, right or wrong. He hasn't said anything which says it wasn't feasible or would cost too much.

In considering evidence questions, we reverse only for abuse of discretion. *Haynes v. American Motors Corp.,* 691 F.2d 1268, 1272 (8th Cir.1982); *Auto-Owners Insurance Co. v. Jensen,* 667 F.2d 714, 722 (8th Cir.1981). I cannot find that the district court abused its discretion in ruling that the testimony on this issue involved recommendations and not feasibility. The testimony on the sense of false security deals only with the reasons for the recommendations. All of the testimony set out above as well as that in the majority opinion abundantly supports the district court ruling.

The term "feasible" has been defined by the Supreme Court in *American Textile Mfrs. Inst. v. Donovan,* 452 U.S. 490, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981). Justice Brennan in his opinion states:

The plain meaning of the word "feasible" supports respondents' interpretation of the statute. According to Webster's Third New International Dictionary of the English Language 831 (1976), "feasible" means "capable of being done, exe-

cuted, or effected." Accord, The Oxford English Dictionary 116 (1933) ("Capable of being done, accomplished or carried out"); Funk & Wagnalls New "Standard" Dictionary of the English Language 903 (1957) ("That may be done, performed or effected"). Thus, § 6(b)(5) directs the Secretary to issue the standard that "most adequately assures ... that no employee will suffer material impairment of health," limited only by the extent to which this is "capable of being done." 452 U.S. 508–9, 101 S.Ct. at 2490, 69 L.Ed.2d 201–202.

The ruling of the district court was consistent with this definition of feasible. While Mr. Justice Brennan's opinion deals with use of the word in 29 U.S.C. § 655(b)(5), his broad treatment of the word "feasible" cannot be limited simply to that statute as opposed to its use in Rule 407, which was presented to Congress and subject to Congressional action.

In *American Textile Mfrs. Inst. v. Donovan,* the dissenting opinion of Justice Rehnquist observed "the remarkable range of interpretation" of the term "to the extent feasible." 452 U.S. at 544, 101 S.Ct. at 2508. The majority opinion here reaches to the second dictionary definition of feasible in order to conclude that feasibility was controverted.[1] Where the district court has made a ruling consistent with the Supreme Court definition of the word "feasible," I think we should not find error in its failing to consider the second meaning of this word that has a "remarkable range of interpretation."

The majority finds feasibility an issue not from direct testimony that feasibility was involved, but rather by inferring that it is an issue from the testimony concerning false sense of security which was given as the reason for the recommendation of the police chief. My view is that this testimony

1. Not only the dictionaries cited by the majority but also The American Heritage Dictionary of the English Language, Funk & Wagnall's, Standard Encyclopedic Dictionary, Webster's New World Dictionary, and The Oxford English Dictionary all give as the first definition that

recognized by the Supreme Court in *American Textile Mfrs. Inst. v. Donovan,* 452 U.S. 490, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981) and as the second definition that recognized by the majority in its opinion.

relates to the question of necessity or desirability and that the majority stretches the chain of inferences too far.

The view expressed here is supported by decisions from other circuits. The Fourth Circuit in *Werner v. Upjohn Co., Inc.,* 628 F.2d 848 (4th Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981), held that defendant did not controvert the feasibility of an additional drug product warning; it merely questioned the necessity of such a warning. *Id.* at 855. The Seventh Circuit in *Oberst v. International Harvester Co., Inc.,* 640 F.2d 863 (7th Cir.1980) held that evidence of a design change excluded at trial would have been cumulative since it was clear that design alternatives were commercially available. So here the issue was the necessity or reasons for not using peepholes and chain locks which undoubtedly were commercially available. The evidence simply was that they were not recommended and therefore not used.

Plaintiffs make no contention with respect to the impeachment exception to Rule 407, neither did they make such contention at trial. I find no testimony in the record that defendants stated that they had done everything necessary for a secure motel, but simply that they had received recommendations from the chief of police and followed these recommendations. I find no testimony of defendants that chain locks and peepholes could not be used successfully, but only that the majority has inferred such statements from the testimony of false sense of security. I think we should not find impeachment of defendants on the basis of inferences the majority draws from the testimony.

Defendants' closing argument stressed the recommendations given by the chief of police. The closing argument certainly cannot be used to justify introduction of evidence during the course of the trial. While defendants posed the question of "what more can they do" the statement, read in context, simply argues that defendants had followed expert recommendations. The following is the omission from the quotation on page 1214 of the majority opinion:

You go to the chief of the police or of the area where you're working and you ask him, "What should I do," and he tells you and you do it. You call in Union Electric and they say put in 10 more lights, you put in 10 more lights.

The argument continued:

These gentlemen were concerned about the safety of their guests, concerned enough to seek professional help from Union Electric and from the chief of police, and not only to seek it, but to follow the advice that was given them. What more could they do?

Defendants' argument viewed in its entirety related to the police chief's recommendation and was fully supported by the evidence.

Plaintiffs' attempted introduction of defendants' subsequent remedial measures was an attempt "solely to raise the spectre of negligence under the guise of feasibility." J. Cotchett & A. Elkind, *Federal Courtroom Evidence,* at 58–59. The trial court is entitled to guard against the improper admission of such evidence. *See* 10 J. Moore, *Moore's Federal Practice* § 407.04 at p. IV–159 (2d ed. 1982); 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 407[05] at p. 407–26 (1982).

I cannot conclude that the district court abused its discretion in ruling that the testimony involved matters of recommendation rather than feasibility, and in making a ruling that is consistent with the plain meaning of feasible as recognized in the recent decision of the United States Supreme Court. Accordingly, I would affirm.